Zachary MORGAN, Appellant,

v.

Edwin J. LaVALLEE, Warden, Appellee.

No. 70, Docket 75–2044.

United States Court of Appeals, Second Circuit.

Argued Sept. 2, 1975.

Decided Oct. 14, 1975.

Stephen M. Latimer, New York City (Donald Grajales, Bronx Legal Services Corp., New York City, on the brief), for appellant.

Burton Herman, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen. of the State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., on the brief), for appellee.

Before SMITH, MANSFIELD and OAKES, Circuit Judges.

OAKES, Circuit Judge:

Appellant, an inmate of New York's Clinton State Prison a/k/a Dannemora, comes to us on this occasion [1] by virtue of dismissal without a hearing of an action he brought under 42 U.S.C. § 1983, which alleged that the following features of his confinement were in violation of his constitutional rights: (1) the prison authorities' refusal to permit him to receive a specific publication (the January 1974 issue of the "Midnight Special"); (2) an alleged institutional order barring his correspondents from sending him postage stamps; and (3) his placement in solitary confinement for his "political beliefs," which the complaint details as his "refusal to partake in" a "neo slavery program" consisting of washing bowls, stripping before exchanging linen and standing at his door when talking to an officer. The United States District Court for the Northern District of New York, James T. Foley, *Chief Judge,* dismissed the first or "publication" claim on the basis that available administrative

---

[1]. Appellant unsuccessfully appealed the dismissal of a claim under 42 U.S.C. § 1983 for censorship of his correspondence with counsel, *Morgan v. Montanye,* 516 F.2d 1367 (2d Cir. 1974), *rehearing en banc denied* (1975), 521 F.2d 693 (Oakes, *J.,* dissenting from denial).

remedies have not been exhausted,[2] the second or postage stamp claim on essentially the same basis (that Morgan has a right to appeal within the Correction Department under 7 N.Y.C.R.R. Pts. 250, 260, 270),[3] and the third or "segregation" claim on the basis that appellant failed to allege facts which, if proven, would show that he had been unconstitutionally punished for the exercise of his political beliefs. We reverse as to the first two claims and remand for further proceedings in connection therewith.

The trial court's imposition of a requirement that state administrative remedies be exhausted is not in accord with either the holdings of the Supreme Court or with recent cases in this circuit. Only last year Mr. Justice Brennan speaking for seven members of the Court said in *Steffel v. Thompson*, 415 U.S. 452, 472–73, 94 S.Ct. 1209, 1222, 39 L.Ed.2d 505 (1974):

> When federal claims are premised on 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3)—as they are here—we have not required exhaustion of state judicial or administrative remedies, recognizing the paramount role Congress has assigned to the federal courts to protect constitutional rights.

While this was dictum in the sense that the decision was addressed to state judicial proceedings, the statement was integral to the holding that exhaustion is "what would be required if both federal injunctive and declaratory relief were unavailable in a case where no state prosecution had commenced."[4] Inmates of state prisons, moreover, are not "held to any stricter standard of exhaustion than other civil rights plaintiffs." *Wilwording v. Swenson*, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971). As the Fourth Circuit has recently pointed out,[5] had the Supreme Court wished to impose an exhaustion requirement peculiar to prisoners' rights suits it might have said as much in *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).

This court has flatly held that exhaustion of state *judicial* remedies is unnecessary in a § 1983 prisoner's suit. *Corby v. Conboy*, 457 F.2d 251, 253 (2d Cir. 1972). More recently, in *Plano v. Baker*, 504 F.2d 595, 597 (2d Cir. 1974), without deciding whether, in light of the dictum in *Steffel*, *Eisen v. Eastman*, 421 F.2d 560 (2d Cir. 1969), *cert. denied*, 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75 (1970), and *Blanton v. State University of New York*, 489 F.2d 377 (2d Cir. 1973), which require exhaustion of state administrative remedies in civil rights actions, had lost validity, we reiterated that any exhaustion requirement is not to be applied woodenly in such cases. 504 F.2d at 597; *see Eisen v. Eastman, supra*, 421 F.2d at 569; *Ray v. Fritz*, 468 F.2d 586, 587 (2d Cir. 1972) (per curiam). Thus, where pursuit of the state remedy "would be futile or inadequate," sterile recourse to exhaustion will not be required. *Plano v. Baker, supra*, 504 F.2d at 597. *See also Parker v. Casscles*, No. 74–8161 (2d Cir. May 14, 1975) (order).

Here there appear to be no further remedies available for appellant to pursue. In respect to the January 1974 issue of the "Midnight Special" (appar-

---

2. Administrative Bulletin # 60, New York Commission of Corrections (May 30, 1972), provides for a screening of mail by a "Correctional Facility Media Review Committee." If it decides a particular media article is to be suppressed under criteria set forth in Bulletin # 60, it is to notify the affected inmate. He may submit a statement in opposition to the suppression. If the decision to suppress is supported by the local correctional superintendent, the literature and the inmate's statement are forwarded to a Departmental Media Review Committee, along with a statement of reasons justifying the suppression.

3. 7 N.Y.C.R.R. Parts 250 through 270 deal with procedures for implementing standards of inmate behavior, and for review of disciplinary decisions taken to enforce such standards.

4. The *Steffel* statement is relied on by the Fourth Circuit to buttress its en banc decision in *McCray v. Burrell*, 516 F.2d 357 (4th Cir. 1975), that administrative remedies need not be exhausted by a prison inmate in a § 1983 suit relative to conditions of incarceration.

5. *McCray v. Burrell*, 516 F.2d 357, 363 (4th Cir. 1975).

ently an interprison newsletter or newspaper) of which he alleges he was deprived, appellant's complaint (¶ 3) avers that he contacted the Clinton Media Review Committee "in an attempt to redress this restriction" but that he has received no satisfaction. There are no further steps available to appellant under the administrative guidelines which apply to this material. Administrative Bulletin # 60, New York Commission of Corrections (May 30, 1972). While there is a possibility of a "departmental review" of the decision of the local prison media committee, there is no assurance of such a review and, furthermore, appellant can make only a blind submission (never having seen the magazine at issue) in support of his position should review be given. In this context it would indeed be "futile and inadequate" to leave appellant passively awaiting the arrival of this administrative Godot.

In regard to the memo appellant claims to have received from the Clinton Correspondence Department, which directs him to advise the people on his correspondence list not to send him stamps—a claim the State's brief calls "incredible" because "[t]here is no prohibition against sending an inmate stamps"—no provision for review of any such administrative order, if one were made, has been called to our attention. The district court's reliance on 7 N.Y.C.R.R. Parts 250 and 260 is inapposite since these correctional regulations pertain solely to disciplinary proceedings and their review; Part 270 refers only to the Commissioner's further review. The State's claim that each inmate is given one postage stamp a week for mailing is equally inapposite since the gist of appellant's claim is that he was directed to tell his correspondents not to send him stamps.

■ Thus, as to the "Midnight Special" any administrative remedy available appears to us to have been inade-

quate, and as to the postage stamp memo no such remedy has been explicated. Before the court below may relinquish its § 1983 jurisdiction it must, on the most narrow reading of the cases, be positively assured—it may not presume—that there are speedy, sufficient and readily available administrative remedies remaining open to pursue, an assurance certainly not attainable on this record.

■ Construing prison inmates' complaints liberally as we must, *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Wilwording v. Swenson, supra,* the first count of the complaint here in issue sufficiently alleges a violation of the prisoner's right to access to media. First Amendment rights to hold and express beliefs and receive information are entitled to "special solicitude." *Newkirk v. Butler,* 364 F.Supp. 497, 501 (S.D.N.Y.1973), *aff'd in relevant part,* 499 F.2d 1214 (2d Cir.) *vacated as moot and dismissed sub nom., Preiser v. Newkirk,* 422 U.S. 395, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975). *See also Sostre v. McGinnis,* 442 F.2d 178, 189 (2d Cir. 1971) (en banc), *cert. denied sub nom., Oswald v. Sostre,* 405 U.S. 978, 92 S.Ct. 1190, 31 L.Ed.2d 254 (1972). *See also Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974). Thus affirmative justification for withholding a given publication must be furnished. *Collins v. Schoonfield,* 344 F.Supp. 257 (D.Md.1972). Such justification may follow only in limited circumstances when legitimate governmental interests are involved, that is, where receipt of the publication would constitute a threat to prison security or order or the inmate's own rehabilitation. *The Luparar v. Stoneman,* 382 F.Supp. 495 (D.Vt.1974). The district court cannot, without close examination of the publication in question, determine whether the regulation as here applied meets the test of *United States v. O'Brien,* 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968),[6] which

---

6. [W]e think it clear that a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial

under *Procunier v. Martinez, supra,* 416 U.S. at 411–14, 94 S.Ct. 1800, must be met even in cases involving censorship of prisoners' materials.

█ So, too, with the allegation relative to the alleged directive to Morgan that he tell his correspondents not to send him postage stamps.[7] If this restriction on an inmate's receiving stamps were fully enforced, it could materially impede the inmate's ability to communicate with the outside world since the institution itself provides only one stamp per week. A prison inmate's rights to communicate with family and friends are essentially First Amendment rights subject to § 1983 protection, *Corby v. Conboy, supra; see Procunier v. Martinez, supra,* and may not be infringed without good cause. *Collins v. Schoonfield, supra. See also Adams v. Carlson,* 352 F.Supp. 882 (E.D.Ill.), *rev'd in parts not here relevant,* 488 F.2d 619 (7th Cir. 1973); *Gates v. Collier,* 349 F.Supp. 881, 896 (N.D.Miss.1972), *aff'd,* 501 F.2d 1291, 1313–14 (5th Cir. 1974); *cf. Brown v. Hartness,* 485 F.2d 238 (8th Cir. 1973) (restriction on mailing Christmas cards invalidated). Again, there must be a showing of a substantial governmental interest serving the legitimate and reasonable needs and exigencies of the institutional environment, *Wolff v. McDonnell,* 418 U.S. 539, 574–77, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974), to warrant such limitations upon an individual inmate's rights to communicate.

█ The allegations in the complaint as to being subjected to penalties for political beliefs stand on another footing, however. Neither militant political ideas nor past or threatened litigation on the part of the inmate will authorize prison discipline by way of segregation or otherwise. *United States ex rel. Larkins v. Oswald,* 510 F.2d 583, 584 (2d Cir. 1975); *Sostre v. McGinnis, supra,* 442 F.2d at 189. At the same time allegations of infringement of rights must have some specificity. The only "belief" alluded to in appellant's complaint is his objection to, or "refusal to partake in," the "neo slavery program that emanates from Unit 14 . . . ." The complaint goes on to allege that this program, among other things, consists of "washing bowls, stripping before exchanging linen, and standing at your door when talking to an officer." While the complaint alleges that appellant has found no support for these practices in applicable correction law, rules or regulations, to us they seem to be well within the superintendent's general authority of supervision and management of the institution, New York Correction Law § 18.2, subject always to overriding standards or rules of the State Commission of Correction, *id.* § 46. Absent specific allegations of (a) unjustifiably discriminatory administration of these correctional practices or (b) use of them as punishment without procedural due process, no federal question is raised. An ordinary work assignment that is not unduly onerous or afflictive does not constitute involuntary servitude. *Laaman v. Hancock,* 351 F.Supp. 1265, 1270 (D.N.H.1972); *Wilkinson v. McManus,* 298 Minn. 541, 216 N.W.2d 264 (1974); *cf. Banks v. Norton,* 346 F.Supp. 917, 921 (D.Conn.1972). Nor, absent such allegations, are we to invade the administrator's province in respect to the facially reasonable regulations which affect the health of inmates (stripping before exchange of linen)[8] or

---

7. The trial court should rather readily be able to dispose of the factual contentions of the parties; the State says it never gave Morgan such a directive and has no such regulation in effect.

governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

*United States v. O'Brien,* 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968).

8. *But see Sostre v. Preiser,* 519 F.2d 763, 764 (2d Cir. 1975), contrariwise on rectal searches

the safety of guards or ease of visual inspection of cells (standing at the cell door when talking to a guard), as the regulations complained of in this case are plainly directed toward. The conclusory allegations here made are insufficient to raise a constitutional claim. *Cf. Powell v. Workmen's Compensation Board of the State of New York,* 327 F.2d 131, 137 (2d Cir. 1964). Our views would be quite otherwise, of course, were we to read the complaint as alleging the imposition of segregation without procedural due process.

By the reversal of the judgment below in part, we remand for trial only after the State has had opportunity to demonstrate through the usual device of a motion for summary judgment and supporting affidavits that there are no genuine issues of material fact and no substantial constitutional rights involved under these facts. Since the district court dismissed the complaint sua sponte without requiring an answer by the State, we thought we should make this clear.

Judgment reversed in part, affirmed in part, and remanded.

of inmates in segregation when used as a form of punishment. Genuine health regulations, however, are properly the concern of prison authorities: hygienic clothing and bedding is a goal sought indeed by most minimum standards of prison administration that have been proposed. *See, e. g.,* United Nations Standard Minimum Rules for the Treatment of Prisoners, Rules 17, 18 and 19.