Raul GONZALEZ, Appellee,

v.

Albert SHANKER et al., Appellants.

Nos. 522, 534, Dockets 75–7515, 75–7520.

United States Court of Appeals,
Second Circuit.

Argued Dec. 15, 1975.

Decided April 9, 1976.

Jeffrey S. Karp, New York City (James R. Sander, New York City, on the brief), for appellants Shanker, Carosella, Braverman, Spivack, Levine, Fesko, Green and UFT.

Leonard Koerner, New York City (W. Bernard Richland, Corp. Counsel for the City of New York, L. Kevin Sheridan, Joseph F. Bruno, New York City, of counsel), for Municipal appellants.

Frederick E. Sherman, New York City (Donald S. Hillman, Layton & Sherman, New York City, of counsel), for appellee.

Before MANSFIELD, OAKES and VAN GRAAFEILAND, Circuit Judges.

OAKES, Circuit Judge:

This appeal on a certified question[1] presents for decision the issue whether administrative remedies of the appellee, a junior high school principal, were sufficiently adequate as to have required exhaustion prior to institution of his federal civil rights action.[2] Appellee's complaint alleged harassment by appellants in connection with the performance of his duties as principal of Ottilia M. Beha Junior High School, 60M, located in embattled Community School District No. 1 in Manhattan.[3] The United States District Court for the Southern District of New York, Whitman Knapp, *Judge*, held that appellee was not required to exhaust his contractual remedies or any other procedures available to him under New York Education Law § 310 or otherwise. In the light of our decision in *Fuentes v. Roher*, 519 F.2d 379 (2d Cir. 1975), however, Judge Knapp certified and we accepted this question. In our view the district court was perfectly correct in holding that appellee is not required to exhaust

such remedies. We accordingly remand for trial of the case.[4]

Appellee's complaint was one for a declaratory judgment, injunctive relief and damages against the Community Superintendents of School District No. 1, certain members of the Community School Board for that district, the Chancellor and individual members of the Central Board of Education of the City of New York, certain employees of the Central Board, certain school personnel including members of the United Federation of Teachers (UFT) and private defendants including the UFT. In substance the appellee's claim is that because he favored a slate of minority candidates in school board elections and refused to cooperate with the UFT, and because he is a Puerto Rican and is outspokenly committed to a program of bilingual education, reform and community participation identified with the minority group slate, he has been subjected to a deliberate, continuing and discriminatory program of harassment, interference and noncooperation in the performance of his duties as principal. His complaint sets forth 14 detailed illustrations of the alleged program of harassment, interference and noncooperation, including such things, among others, as denying him adequate staff given other schools, requiring him to submit lengthy and time-consuming reports and explanations, withholding a scheduled repainting of the school, permitting a fire hazard to exist, attacking his reputation in the community, and subjecting his school to repeated and meaningless inspections.

In *Fuentes v. Roher, supra,* 519 F.2d at 386, we stated that this court "albeit with some hesitation," *see Plano v. Baker,*

1. *See* 28 U.S.C. § 1292(b); Fed.R.App.P. 5.

2. The action is for declaratory and injunctive relief under 42 U.S.C. §§ 1981, 1983, 1985(3), 1986. Jurisdiction is founded on 28 U.S.C. §§ 1343, 2201.

3. *See Coalition for Education in District One v. Board of Elections of the City of New York,* 370 F.Supp. 42 (S.D.N.Y.), *aff'd* 495 F.2d 1090 (2d Cir. 1974); *Fuentes v. Roher,* 519 F.2d 379, 381–85 (2d Cir. 1975).

4. The district court also held that the complaint stated a ground for relief and denied appellants' motion to dismiss. While the question whether summary judgment was properly denied is not before us, the parties briefed it extensively. We see no reason in this posture of the case for disturbing the trial court's ruling.

504 F.2d 595, 597 (2d Cir. 1974), has continued to require a civil rights plaintiff to exhaust state administrative remedies. We noted that one exception to the requirement is presented where the question of the adequacy of the administrative remedy is "for all practical purposes coextensive with the merits of the constitutional claim," as was the case in *Fuentes v. Roher, supra,* 519 F.2d at 387. Administrative remedies likewise will not be required to be exhausted where the remedies available are inadequate. *Plano v. Baker, supra,* 504 F.2d at 597; *Ray v. Fritz,* 468 F.2d 586, 587 (2d Cir. 1972) (per curiam). More recently we have said that before a district court may relinquish its civil rights jurisdiction, "it must . . . be positively assured—it may not presume—that there are speedy, sufficient and readily available administrative remedies remaining open to pursue . . .." *Morgan v. La Vallee,* 526 F.2d 221, 224 (2d Cir. 1975). We proceed then to an examination of the remedies which Judge Knapp found to be "inadequate" to afford appellee

the relief to which he might otherwise be entitled in this federal civil rights action.

The UFT appellants urge that the terms of the collective bargaining agreement between the Board of Education of the City and the Council of Supervisors and Administrators of the City of New York, Local 1, School Administrators and Supervisory Organizing Committee, AFL–CIO (hereafter the CSA contract), particularly Articles X and XI thereof, provide specific administrative and contractual remedies for the resolution of appellee's complaints and grievances. The municipal appellants rely principally upon Article XI of the CSA contract. In addition they point out that § 310 of the New York State Education Law provides an administrative appeal to the New York State Commissioner of Education from any of the alleged acts of misconduct on the part of the appellants.

Regarding the adequacy of contractual remedies, appellants claim that the provisions of Article XI of the CSA contract [5]

5. Article XI of the CSA contract on "Special Complaints" provides as follows:

. . . . .

A. *DEFINITION*

A "special complaint" is a complaint by a supervisor that a person or persons or groups are engaging in a course of harassing conduct, or in acts of intimidation, which are being directed against him in the course of his employment, and that the principal of the school in which he is assigned or the District Superintendent of the district in which he is employed or the appropriate Assistant Superintendent at the high school level has not afforded the supervisor adequate relief against such course of conduct or acts of intimidation.

B. *FILING AND PRIORITY HANDLING*

A special complaint shall be promptly filed with the Chancellor by the affected employee or, upon his request, by CSA. Such complaint shall receive expedited handling pursuant to this Article.

C. *JOINT INVESTIGATION AND INFOR-MAL RESOLUTION*

Within twenty-four (24) hours after the special complaint is filed with the Chancellor, a "Joint" Investigating Committee consisting of one representative designated by the Chancellor and one representative designated by CSA shall investigate the complaint at the school or district level to ascertain the facts and bring about a prompt resolution of the

problem without resort to formal procedures.

. . . . .

D. *ADMINISTRATIVE HEARING AND CONTINUED ATTEMPT AT INFORMAL RESOLUTION*

If the complaint is not resolved by the Joint Investigating Committee to the satisfaction of the affected supervisor he may request a hearing before the Chancellor. Within forty-eight (48) hours after receipt of the request for hearing, the Chancellor, or a representative designated by him, shall hold a hearing at which the Joint Investigating Committee shall report its findings and all persons involved, including the affected supervisor, shall have an opportunity to be heard. The complaining supervisor may represent himself at the hearing or, upon request, may be represented by CSA or by a person of his own choosing other than an attorney.

At the hearing the Chancellor, or his representative shall make every effort to resolve the complaint informally and all persons involved shall cooperate toward this end.

E. *DECISION OF THE CHANCELLOR*

Within seventy-two (72) hours following the close of the hearing, the Chancellor shall notify all parties of his decision and the manner in which it shall be effectuated.

F. *FACT FINDING AND RECOMMENDA-TIONS*

If the complaint is not resolved by the Chancellor, the affected supervisor, or CSA

entitled "Special Complaints" deal precisely with the allegations appellee makes with respect to the deliberate, continuing program of harassment, interference and non-cooperation in the performance of his duties as principal. They point out that Subdivision A of Article XI defines a special complaint as a complaint by a supervisor that a person or groups "are engaged in a course of harassing conduct, or in acts of intimidation, which are being directed against him in the course of his employment" and that the district superintendent of his district has not afforded him adequate relief. The supervisor must first file his complaint with the Chancellor of the City Board, Article XI(B), and a two member "joint" investigating committee reviews it within 24 hours in an attempt to "bring about a prompt resolution of the problem without resort to formal procedure." Article XI(C). If unsatisfied the complainant is entitled to a hearing, within 48 hours, where he may

appear, albeit without an attorney, before the committee and Chancellor or his representative, again for the purpose of Article XI informal resolution. The Chancellor's decision must be made within 24 hours. Article XI(E). Within ten days the supervisor may then submit his complaint to a "fact-finder" arbitrator who renders written findings within 72 hours of the closing of his hearing and recommends a remedy. Article XI(F). Within ten days thereafter the city board is to make a determination. Article XI(G).

In support of his claim of interference and non-cooperation, Gonzalez makes certain allegations which appellants contend likewise may be resolved under particular provisions in the CSA contract. As to appellee's claim that appellants are harassing him in order to create a false record of inferior performance and nonaccomplishment as a basis for some "future disciplinary action or termination," appellants contend that Article VII(J)[6] provides an effec-

upon his request, may submit it for hearing and fact finding before an arbitrator selected in accordance with Article X C of this Agreement. The submission shall be made within ten (10) school days after the issuance of the Chancellor's decision.

The fact-finder shall render findings not later than seventy-two (72) hours from the date of the close of the hearing . . . . The fact-finder shall limit his findings strictly to the question whether the employee's complaint has been substantiated by the evidence. If the fact-finder finds the complaint to be substantiated and unremedied, he shall recommend an appropriate remedy.

The fact-finder shall not interpret or apply the provisions of this Agreement or exercise any of the other functions specified in Article X of this agreement, nor shall he exercise any of the powers conferred upon trial examiners pursuant to Section 2590–j 7(f) of the Education Law.

G. *BOARD CONSIDERATION*

Within ten (10) days after receipt of the fact-finder's report, the Board shall make a determination.

**6.** Article VII(J) of the CSA contract provides in part:

1. Supervisors summoned to the office of a district superintendent or to the Office of Personnel shall be given forty-eight hours notice and a statement of reason for the summons . . . . Whenever a supervisor is summoned for an interview for the record

which may lead to disciplinary action, he shall be entitled to be accompanied by a representative who is employed by the city school system or by an employee of CSA who is not a lawyer and he shall be informed of his right. . . .

3. The following procedures shall apply to the dismissal of a supervisor . . . . :

a. The Community Board or the appropriate City Board official shall, at the time of dismissal, submit to the supervisor in writing a notice of dismissal together with a statement of reasons.

b. The supervisor may appeal his dismissal by submitting to the Chancellor a written notice of appeal no later than 10 days after receiving the notice of his dismissal. The notice of appeal to the Chancellor shall contain an answer to the statement of reasons.

c. The Chancellor shall, within 10 days after receipt of the notice of appeal, designate a committee to hear the appeal. The hearing shall be held as promptly as possible following the designation of the committee. The supervisor shall receive written notice of the time and place of the hearing by mail at least one week before the date of the hearing. The notice shall inform the supervisor that he is entitled to appear in person, to be accompanied and advised by any person of his choice, to be confronted by witnesses, to call witnesses and to introduce any relevant evidence. . . . A record tape or disc shall

tive remedy. As to his claim that improper and deleterious material "is being placed in plaintiff's personnel file," it is suggested that Article VI(J) [7] of the contract permits the supervisor to file a grievance under Article X,[8] alleging that there has been a violation, misinterpretation or inequitable application of the contract. Appellants

add, finally, that if a supervisor is not satisfied with the results of the contractual procedures he may then commence a proceeding before the Commissioner of Education pursuant to § 310 of the Education Law [9] and the regulations governing appeals to the Commissioner, 8 New York Code of Rules and Regulations § 275 *et seq.*

be kept of the proceedings where practicable in the form of a recording. . . .

4. The committee shall review the matter and submit its findings to the Chancellor within 20 days of the hearing.

5. The Chancellor shall make the final decision on the appeal for the Board of Education within 20 days of receipt of the committee's findings.

7. Article VI(J) of the CSA contract provides:

Official supervisor files in a school shall be maintained under the following circumstances:

1. No material derogatory to a supervisor's conduct, service, character or personality shall be placed in the files unless the supervisor has had an opportunity to read the material. The supervisor shall acknowledge that he has read such material by affixing his signature on the actual copy to be filed . . . . .

2. The supervisor shall have the right to answer any material filed and his answer shall be attached to the file copy.

3. Upon appropriate request by the supervisor, he shall be permitted to examine his files.

4. The supervisor shall be permitted to reproduce any material in his files.

5. Material will be removed from the files when a supervisor's claim that it is inaccurate or unfair is sustained.

8. Article X of the CSA contract defines "grievance" as follows:

1(a). A complaint by a supervisor covered by this Agreement that there has been a violation, misinterpretation or inequitable application of any of the provisions of this Agreement . . . . .

The procedure for filing a grievance is similar to that of Article XI, note 5, *supra,* beginning with the filing of a grievance with the Chancellor, and followed by a conference between the grievant, CSA and the Chancellor, a written decision by the Chancellor, and the option of a hearing before an arbitrator (one of a panel of three designated by agreement of the parties) appointed by the American Arbitration Association. The arbitrator's authority is circumscribed as follows:

. . . The arbitrator shall limit his decision strictly to the application and interpreta-

tion of the provisions of this agreement and he shall be without power or authority to make any decision:

1. Contrary to, or inconsistent with, or modifying or varying in any way, the terms of this agreement or of applicable law or rules or regulations having the force and effect of law;

2. Involving Board discretion or Board policy under the provisions of this agreement, under Board by-laws, or under applicable law, except that he may decide in a particular case that Board policy was disregarded or that its attempted application under any term of this agreement was so discriminatory, arbitrary, or capricious as to constitute an abuse of discretion.

3. Limiting or interfering in any way with the powers, duties, and responsibilities of the Board under its by-laws, applicable law and rules and regulations having the force and effect of the law.

The decision of the arbitrator shall be in writing and, if made in accordance with his jurisdiction and authority under this agreement, shall be advisory only and not binding upon the Board.

The Board shall make a final determination within 30 days after receipt of the arbitrator's decision . . . . .

9. N.Y. Education Law § 310 (McKinney 1969) provides in relevant part:

Any person conceiving himself aggrieved may appeal or petition to the commissioner of education who is hereby authorized and required to examine and decide the same; and the commissioner of education may also institute such proceedings as are authorized under this article and his decision in such appeals, petitions or proceedings shall be final and conclusive, and not subject to question or review in any place or court whatever. Such appeal or petition may be made in consequence of any action:

. . . . .

7. By any other official act or decision of any officer, school authorities, or meetings concerning any other matter under this chapter, or any other act pertaining to common schools.

We agree with Judge Knapp that the contractual procedures were "woefully inadequate." Article X of the CSA contract, the grievance procedure provision, note 8 *supra,* deals exclusively with interpretation and application of the contract. In the first instance, it does not appear that appellee's claims are founded upon any violation or inequitable application of the contract. It is true that one element of the relief sought is the expunging of "deleterious entries" in his file based on appellants' harassment; on its face, however, this request is not grounded upon any violation of Article VI(J), note 7 *supra,* suitable for resolution under Article X, but upon appellants' alleged pattern of noncooperative acts and its impact upon material in appellee's file. Even if some of the acts complained of could be construed as "grievances" under Article X, as Judge Knapp pointed out, that Article does not even purport to deal with the type of systematic harassment that is the gravamen of the instant action. Likewise, appellee's allegations of appellants' harassment for the purpose of future disciplinary action do not constitute a claim of a violation of Article VII(J), note 6 *supra.* That Article does not prohibit, or provide a remedy for, pre-disciplinary harassment. It merely gives a supervisor certain procedural rights once disciplinary proceedings have begun, and more limited procedural rights in connection with formal interviews with superiors which may lead to disciplinary action.

An even more decisive aspect of the inadequacy of the contractual remedies is their lack of procedural safeguards, even in Article XI, note 5 *supra,* which purports to deal with claims of "harassment." The objective of Article XI, as well as of Article X, is plainly informal resolution. The complainant is expressly denied representation of counsel before the "joint" committee under Article XI(D), and may have only representation by CSA or another supervisor at the hearing with the Chancellor under Article X. Both Articles provide for informal discussions and advisory rather than binding arbitration. The powers of the arbitrator are severely limited under Article XI(F) in that he expressly may not exercise any of the powers conferred upon trial examiners by N.Y. Education Law § 2590–j(7)(f) (McKinney Supp.1975).[10] Thus he does not have the power to administer the oath or subpoena witnesses or papers. As Judge Knapp noted, this limitation upon the arbitrator creates an inadequacy of contractual remedies not present in *Fuentes v. Roher, supra,* where the plaintiff was given by contract "procedural protections" including "rights to notice, retained counsel [and] the opportunity to call and to cross-examine witnesses." 519 F.2d at 383.

As we view the collective bargaining agreement, then, it lacks the procedural

10. N.Y. Education Law § 2590–j(7)(f) (McKinney 1975) gives trial examiners the following powers, among others:

The trial examiner shall administer the oath to all appropriate witnesses. A trial examiner shall have the power to subpoena witnesses, papers and records. The provisions of the civil practice law and rules in relation to enforcing obedience to a subpoena lawfully issued by a judge, arbitrator, referee or other person in a matter not arising in an action in a court of record apply to a subpoena issued by a trial examiner as authorized by this subdivision.

Under Article XI of the CSA contract, note 5 *supra,* the "factfinder" arbitrator "shall not . . . exercise any of the powers conferred upon trial examiners pursuant to Section 2590–j(7)(f) of the Education Law."

Appellants argue that despite the limitations on the arbitrator under Article XI, an arbitrator under Article X may implicitly issue subpoenas, and administer oaths under N.Y. C.P.L.R. § 7505 (McKinney 1963) and the grievant may utilize counsel, present evidence and cross-examine witnesses under N.Y. C.P.L.R. § 7506 (McKinney 1963). Whether or not this is the case, we have already indicated we agree with Judge Knapp that even if one or two of appellant's examples of alleged harassment might be remediable as "grievances" in Article X arbitration, the substance of his civil rights claims are not. Under Article X(C)(3), moreover, the decision of an Article X arbitrator is not binding on the community or central school boards against whom appellant seeks relief. *See* note 8, *supra.* We therefore cannot say that we are "positively assured . . . that there are speedy, sufficient and readily available" remedies under Article X which appellee can be required to exhaust. *Morgan v. LaVallee,* 526 F.2d 221, 224 (2d Cir. 1975).

attributes that would assure either accurate factfinding or satisfactory resolution of constitutional claims, particularly against the background of animosity and abuse that is alleged here. The denial of counsel at various stages, together with the absence of compulsory process for the production of witnesses, papers and records or discovery procedures such as would be available under the Federal Rules of Civil Procedure, the lack of evident opportunity for cross-examination or for the application of the usual rules of evidence, all militate against a finding of administrative remedy adequacy. *See Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 47, 57, 94 S.Ct. 1011, 1019, 1024, 39 L.Ed.2d 147, 157, 163 (1974).

Moreover, the presiding authority at these assorted proceedings is not empowered to remedy appellee's complaint. Money damages for past wrongs cannot be awarded, the arbitrator's determinations are not binding, and the private defendants including the UFT defendants would in no way be involved in the contractual proceedings, would have no obligation to participate in them and would in no way be bound by the outcome. Under our decisions the factfinding procedures are, then, plainly inadequate. *See Plano v. Baker, supra,* 504 F.2d at 598–99; *Morgan v. LaVallee, supra.*

As to § 310 of the Education Law, it may be noted that even the courts of New York do not consider that failure to invoke that remedy bars judicial relief.[11] As we noted in *Plano v. Baker, supra,* 504 F.2d at 598 n. 5, the hearing provided before the Commissioner is no more than an informal round table discussion. No transcript of the proceedings is made, and the right of examination and cross-examination of witnesses is denied. Moreover, the administrator could not award monetary damages, the relief sought. *See id.,* 504 F.2d at 599; *Ray v. Fritz, supra,* 468 F.2d at 587.

We find that the contractual and administrative procedures available to Gonzalez, whether taken separately or together as a "panoply" of remedies, are fatally inadequate to provide either accurate factfinding or satisfactory relief should appellee's claims be sustained on the merits. Such procedures need not therefore be exhausted before this civil rights action proceeds and we hereby remand the case for trial.

Judgment in accordance with opinion.

---

11. *Lorenz v. Board of Education,* 264 N.Y. 591, 191 N.E. 579 (1934); *Frankle v. Board of Education,* 285 N.Y. 541, 32 N.E.2d 830 (1941). Of course, the opportunity to review in the state courts a Section 310 proceeding would not

make the state administrative remedy adequate. *See Kinsella v. Board of Education of Central School District No. 7,* 378 F.Supp. 54, 60 (W.D.N.Y.1974) (three-judge court).