635 F.2d 97
 John L. SWAN, on behalf of himself and on behalf of all
others similarly situated, Plaintiff-Appellant,
and
Paul E. Ambrose, Richard W. Bowley and Linda J. Gaudette,
Intervenors- Appellants,
v.
R. Kent STONEMAN, Commissioner of the Department of Social
and Rehabilitation Services, State of Vermont,
Defendant-Appellee.
 No. 1080, Docket 79-7729.
 United States Court of Appeals,
Second Circuit.
 Argued April 30, 1980.
Decided Oct. 17, 1980.
 
 James C. May, Springfield, Vt. (Neil Mickenberg, Vermont Legal Aid, Inc., Springfield, Vermont, on brief), for intervenors-appellants.
 Geoffrey A. Yudien, Asst. Atty. Gen., Waterbury, Vt. (M. Jerome Diamond, Atty. Gen., Waterbury, Vt., on brief), for defendant-appellee.
 Before LUMBARD, VAN GRAAFEILAND and KEARSE, Circuit Judges.
 KEARSE, Circuit Judge:
 
 
 1
 The action giving rise to this appeal was commenced by plaintiff John Swan on February 2, 1979, seeking declaratory and injunctive relief under 42 U.S.C. § 1983 on behalf of himself and all others similarly situated, on the grounds that certain practices and procedures of the Vermont Department of Social and Rehabilitation Services deprived the purported class of rights under the federal Rehabilitation Act of 1973 and the Due Process Clause of the Fourteenth Amendment. Jurisdiction was alleged under 28 U.S.C. §§ 1343(3) and (4) (1976).[1] On May 24, Paul E. Ambrose, Richard W. Bowley and Linda J. Gaudette moved for leave to intervene pursuant to Fed.R.Civ.P. 24(b). Three days later, Swan died.
 
 
 2
 On September 12, 1979, the district court denied class certification and granted defendant's motion to dismiss on the grounds that the deceased plaintiff could not represent the class, that the court lacked jurisdiction over the proposed claims of Bowley and Gaudette, and that Ambrose had failed to exhaust state administrative remedies. Since we conclude that the exhaustion doctrine does not bar Ambrose's due process claim, we reverse the dismissal as to Ambrose and remand to the district court for further proceedings.
 
 
 3
 * The Rehabilitation Act of 1973 (the "Act"), 29 U.S.C. § 701 et seq. (1976 and Supp. II 1978), established a program to provide federal funds, through state agencies, for the training of physically or mentally handicapped persons, with a view to enabling such persons to obtain gainful employment. The Act defines a handicapped individual, for purposes of rehabilitation services, as
 
 
 4
 any individual who (i) has a physical or mental disability which for such individual constitutes or results in a substantial handicap to employment and (ii) can reasonably be expected to benefit in terms of employability from vocational rehabilitation services....
 
 
 5
 29 U.S.C. § 706(7)(A).[2] Both the Act and the regulations promulgated thereunder by the Secretary of Health, Education, and Welfare (the "Secretary"), envision that there may be an extended period of evaluation, not exceeding eighteen months, during which rehabilitation services may be rendered with the aid of federal funds, before a determination is made as to the reasonable expectation that a given handicapped individual would benefit from vocational rehabilitation services. 29 U.S.C. §§ 706(5)(G), 723(a)(1), 731; 45 C.F.R. § 1361.36 (1979).
 
 
 6
 A state seeking funding under the Act must, inter alia, submit a plan and designate a state agency responsible for supervising and administering the plan. 29 U.S.C. § 721(a)(1)(A). Vermont has empowered its Department of Social and Rehabilitation Services (the "Department") to provide vocational rehabilitation for disabled persons and to "(c)ooperate with appropriate federal agencies in receiving federal funds in support of programs which the department administers." Vt.Stat.Ann. tit. 33, § 2595 (Supp.1979). The Department's Vocational Rehabilitation Division ("VRD") is responsible for administering Vermont's vocational rehabilitation program.
 
 
 7
 Under the Vermont plan, VRD may classify applicants as eligible or ineligible for rehabilitation services principally on the basis of their filed applications; or it may place them in an "extended evaluation" category for up to eighteen months. For applicants in the extended evaluation category, funding is provided for rehabilitation services during the evaluation period, giving VRD a better opportunity to assess whether such services are likely to result in employability.
 
 The Plaintiff and the Intervenors
 
 8
 Swan was a man in his 30's who had suffered residual brain damage following removal of a brain tumor in 1974. In May 1977, Swan began rehabilitation therapy at the Woodstock Learning Clinic in Woodstock, Vermont, and applied to VRD for rehabilitation services. On June 23, 1977, VRD certified Swan for an extended evaluation period of up to eighteen months, and thereafter created an individual rehabilitation program for him and paid for his therapy sessions at Woodstock. In early November 1978, a VRD counselor advised Swan and his guardian, orally and by letter, that while Swan had made considerable progress in the program, his organic impairments were such that employability did not appear to be a reasonable possibility within the near future, and that VRD had therefore decided to discontinue Swan's rehabilitation program as of December 15, 1978. VRD's letter informed Swan that he could appeal from this decision, but did not indicate that he had any right to a hearing prior to the effectiveness of the decision. Funding for Swan was eventually terminated on December 22, 1978.
 
 
 9
 Swan commenced this action in February 1979 against the Commissioner of the Department, ("Commissioner"), contending that by failing to provide "pretermination hearings", VRD deprived him of rehabilitation benefits without due process of law.[3] The Commissioner has contended, inter alia, that since Swan had never been certified as eligible, his eligibility was never "terminated." Swan's contention, however, appears to be that a hearing is required before termination of any benefits, even benefits provided pursuant to extended evaluation status.
 
 
 10
 Swan brought the suit as a class action, and on March 1, 1979, he moved pursuant to Fed.R.Civ.P. 23(b), for certification of a class consisting of
 
 
 11
 All persons who have been declared ineligible for vocational rehabilitation services by defendant or his predecessors in office through the Vermont Vocational Rehabilitation Division since the effective date of the Rehabilitation Act of 1973, as well as all persons who are currently receiving vocational rehabilitation services from the defendant.
 
 
 12
 The proposed class would thus include all persons who, upon application, had been declared eligible, declared ineligible, or placed in extended evaluation status.
 
 
 13
 On May 24, 1979, Ambrose, Bowley and Gaudette moved for leave to intervene in the action as plaintiffs pursuant to Fed.R.Civ.P. 24(b), on the grounds that their claims were identical to those of Swan. They also sought to represent the class described by Swan.
 
 
 14
 Ambrose, in his proposed complaint, alleged that he had sought eligibility under VRD's program four times between 1974 and 1978. In response to his first application, dated January 14, 1974, he was placed in an "eligibility determination" status until June 17, 1974;[4] on the latter date, he was declared ineligible by a VRD rehabilitation assistant. Ambrose alleges that neither he nor his parents were afforded an opportunity for consultation prior to this determination or informed of their rights to a hearing. Ambrose applied for eligibility a second time on December 1, 1974, and on February 20, 1975, was accepted as an "extended evaluation" client. Benefits were discontinued by VRD on August 1, 1976, again allegedly without affording Ambrose or his parents "an opportunity for full consultation" or a hearing prior to termination of the benefits and without explanation as to the grounds for the decision. Ambrose filed his third application on April 6, 1977, and was placed in the "eligibility determination" category until January 10, 1978, when his file was closed. On April 15, 1978, he sought to apply a fourth time, but was told, on May 11, that he would have to demonstrate his initiative by performing volunteer work before VRD would consider reopening his case. On the basis of these facts, Ambrose, like Swan, alleged that the termination and denial of benefits to him without a prior hearing denied him due process.[5]
 
 
 15
 The complaint which Bowley and Gaudette sought to file indicated that they, unlike Swan and Ambrose, had been certified by VRD as eligible for rehabilitation services and were still receiving benefits. Bowley and Gaudette alleged, however, that various VRD procedures conflicted with provisions of the Rehabilitation Act and thus violated the Supremacy Clause of the Constitution.
 
 
 16
 On May 27, before the court had ruled on Swan's class certification motion, Swan died.
 
 
 17
 The Motion to Dismiss and the Decision Below
 
 
 18
 Immediately after Swan's death, the Commissioner moved to dismiss the action on the grounds that Swan's death rendered his action moot and that both Swan and the proposed intervenors had failed to exhaust their administrative remedies. The exhaustion contention was based on provisions of the Vermont statutes which make available to disappointed applicants a hearing before the Vermont Human Services Board (the "Board"). Vt.Stat.Ann. tit. 3, § 3091 (Supp.1979). Section 3091(a) provides as follows:
 
 
 19
 An applicant for or a recipient of assistance, benefits or social services from the department of rehabilitation ... may file a request for a fair hearing with the human services board. An opportunity for a fair hearing will be granted to any individual requesting a hearing because his claim for assistance, benefits or services is denied, or is not acted upon with reasonable promptness; or because he is aggrieved by any other agency action affecting his receipt of assistance, benefits or services ...; or because he is aggrieved by agency policy as it affects his situation.
 
 
 20
 Sections 3091(b) and (c) empower the Board to compel, by subpoena, the attendance of witnesses and the production of books and records, and require it to issue written findings of fact. Section 3091(d) gives the Board authority to reverse or modify any VRD decision which the Board finds is based on VRD regulations in violation of federal law. That section reads as follows:
 
 
 21
 After the fair hearing the board may affirm, modify or reverse decisions of the agency; it may determine whether an alleged delay was justified; and it may make orders consistent with this title requiring the agency to provide appropriate relief including retroactive and prospective benefits. The board shall consider and shall have the authority to reverse or modify, decisions of the agency based on regulations which the board determines to be in conflict with state or federal law. The board shall not reverse or modify agency decisions which are determined to be in compliance with applicable law, even though the board may disagree with the results effected by those decisions.
 
 
 22
 Finally, an applicant may appeal to the state supreme court from an unfavorable decision by the Board, § 3091(f), or, after obtaining a favorable Board decision, may petition the supreme court for relief against any non-compliance with the Board decree, § 3091(g).
 
 
 23
 The district court, after a hearing on the motion to dismiss as well as on the motions for class certification and intervention, denied class certification and dismissed the action. Noting first that there had been no motion to substitute Swan's representative as a party, the court ruled that "(s)ince the relief sought by John Swan was personal to him, his action is abated." The court further concluded that "(i)n this posture of the case it is clear that plaintiff cannot represent the class nor manage, in behalf of other recipients, the action sought to be certified," and proceeded to consider whether the action could be maintained with any or all of the proposed intervenors substituted as named plaintiffs. Since Bowley and Gaudette, who had never been denied benefits, asserted no constitutional claims other than conflicts between state procedures and the Act in violation of the Supremacy Clause, the court, relying on Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979), concluded that their complaint did not state a federal claim sufficient to support subject matter jurisdiction. As to Ambrose, who alleged a denial of due process, the court concluded that since "the availability of a hearing before the Vermont Human Services Board, under 3 V.S.A. § 3091, ... provided the plaintiff and the proposed intervenors with a speedy, sufficient and readily available administrative remedy," "(e) xhaustion of this remedy was, therefore, necessary before bringing this action."
 
 
 24
 On this appeal, although Swan and all of the would-be intervenors are styled "appellants," there appears to be no challenge to either the dismissal as to Swan[6] or the refusal to allow Bowley and Gaudette to intervene. Rather it is urged chiefly that the requirement of exhaustion of administrative remedies should not be applied to bar Ambrose's claim. We agree.
 
 II
 
 25
 It is well settled that exhaustion of state judicial remedies is not a prerequisite to adjudication of § 1983 claims in federal court. See, e. g., Ellis v. Dyson, 421 U.S. 426, 432-33, 95 S.Ct. 1691, 1695, 44 L.Ed.2d 274 (1975); Wilwording v. Swenson, 404 U.S. 249, 251, 92 S.Ct. 407, 409, 30 L.Ed.2d 418 (1971); McNeese v. Board of Education, 373 U.S. 668, 671, 83 S.Ct. 1433, 1435, 10 L.Ed.2d 622 (1963); Monroe v. Pape, 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961). The law is less clear, however, with respect to the exhaustion of state administrative remedies. The language of a number of Supreme Court decisions suggests that state administrative remedies, like state judicial remedies, need not be exhausted prior to commencement of a federal civil rights suit. See, e. g., Ellis v. Dyson, supra; Steffel v. Thompson, 415 U.S. 452, 472-73, 94 S.Ct. 1209, 1222, 39 L.Ed.2d 505 (1974); Carter v. Stanton, 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972); Houghton v. Shafer, 392 U.S. 639, 640, 88 S.Ct. 2119, 2120, 20 L.Ed.2d 1319 (1968); King v. Smith, 392 U.S. 309, 312 n.4, 88 S.Ct. 2128, 2132 n.4, 20 L.Ed.2d 1118 (1968); Damico v. California, 389 U.S. 416, 417, 88 S.Ct. 526, 527, 19 L.Ed.2d 647 (1967). Several courts have interpreted these decisions as laying down a flat rule that exhaustion of administrative remedies is not required in such cases. See, e. g., Green v. Ten Eyck, 572 F.2d 1233, 1239-40 (8th Cir. 1978); McCray v. Burrell, 516 F.2d 357, 361-65 (4th Cir. 1975) (en banc), cert. granted, 423 U.S. 923, 96 S.Ct. 264, 46 L.Ed.2d 249 (1975), cert. dismissed, 426 U.S. 471, 96 S.Ct. 2640, 48 L.Ed.2d 788 (1976); Hawkins v. Town of Shaw, 461 F.2d 1171, 1176 (5th Cir. 1972) (en banc) (Wisdom, J., concurring). See generally, Davis, Administrative Law Treatise, § 20.01-1 (Supp.1976).
 
 
 26
 This Court, however, has adhered to the view, as first expressed in Eisen v. Eastman, 421 F.2d 560, 569 (2d Cir. 1969), cert. denied, 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75 (1970), that the Supreme Court decisions mean not that state administrative remedies need never be exhausted prior to commencement of § 1983 suits, but merely that the exhaustion requirement should not be given "wooden application." Id. See, e. g., Morgan v. LaVallee, 526 F.2d 221, 223 (2d Cir. 1975); Fuentes v. Roher, 519 F.2d 379, 387 (2d Cir. 1975); Plano v. Baker, 504 F.2d 595, 597 (2d Cir. 1974); Blanton v. State University of New York, 489 F.2d 377, 383-84 (2d Cir. 1973). Our view that administrative remedies must be exhausted in appropriate circumstances finds implicit support in Barry v. Barchi, 443 U.S. 55, 63 n.10, 99 S.Ct. 2642, 2648 n.10, 61 L.Ed.2d 365 (1979), in which a licensed horse trainer challenged as unconstitutional a New York law that provided for a hearing after, but not prior to, the suspension of his license. In ruling that exhaustion of the available remedies was not required, the Supreme Court appeared to acknowledge that administrative exhaustion generally is required unless the case comes within a recognized exception to that doctrine:
 
 
 27
 We reject appellants' further contention that Barchi should not have commenced suit prior to exhausting the procedure contemplated under § 8022. Under existing authority, exhaustion of administrative remedies is not required when 'the question of the adequacy of the administrative remedy ... (is) for all practical purposes identical with the merits of (the plaintiff's) lawsuit.' Gibson v. Berryhill, 411 U.S. 564, 575, 93 S.Ct. 1689, 1696, 36 L.Ed.2d 488 (1973).
 
 
 28
 In each case, the applicability of the exhaustion requirement will depend upon the nature of the asserted claim, the requested relief, and the available state administrative procedures. Mindful of "the paramount role Congress has assigned to the federal courts to protect constitutional rights," Steffel v. Thompson, supra, 415 U.S. at 473, 94 S.Ct. at 1222, 39 L.Ed.2d 505, we have held that before relinquishing its § 1983 jurisdiction a federal court must "be positively assured-it may not presume-that there are speedy, sufficient and readily available administrative remedies remaining open to pursue." Morgan v. LaVallee, supra, 526 F.2d at 224. Thus, a civil rights suit will not be dismissed on exhaustion grounds if the availability of the administrative remedy is not assured, id.; or if the remedy may be inadequate, Gonzalez v. Shanker, 533 F.2d 832, 837-38 (2d Cir. 1976); Plano v. Baker, supra; or if the adequacy of the remedy is "for all practical purposes coextensive with the merits of the plaintiff's constitutional claim," Fuentes v. Roher, supra, 519 F.2d at 387; see also, Barry v. Barchi, supra; or if the administrative procedures fail to provide for representation of counsel, testimony under oath or subpoena of witnesses or papers, Gonzalez v. Shanker, supra, 533 F.2d at 837; or if there is no adequate procedure for resolution of issues of fact, Plano v. Baker, supra, 504 F.2d at 598.
 
 
 29
 Turning to the case at hand, we observe that the Vermont procedures avoid many of the deficiencies noted above. Vermont provides for a hearing on reasonable notice, an opportunity to be represented by counsel, compulsory process for the development of evidence, factual dispute resolution, appeal and enforcement. Nor is the Board limited to interpreting and applying agency regulations or state law, for it is expressly authorized to consider and reverse agency decisions that are based on "regulations which the board determines to be in conflict with state or federal law." Vt.Stat.Ann. tit. 3, § 3091(d) (emphasis added).
 
 
 30
 Thus while a federal court is arguably a better forum than an administrative agency for resolution of constitutional claims, Califano v. Sanders, 430 U.S. 99, 108-09, 97 S.Ct. 980, 985-86, 51 L.Ed.2d 192 (1977), we cannot say that the Board would decline, or lack power, to hear a constitutional challenge. Cf. Mathews v. Eldridge, 424 U.S. 319, 329-30, 96 S.Ct. 893, 900, 47 L.Ed.2d 18 (1976).
 
 
 31
 Nonetheless, the nature of Ambrose's due process claim and the timing of the available state administrative remedies persuade us that Ambrose need not exhaust those remedies. The gravamen of Ambrose's § 1983 claim is that by failing to provide for full consultation and an evidentiary hearing prior to a termination of benefits under an extended evaluation plan or prior to any determination of ineligibility, the Department deprives him of due process. At least one factual predicate of this claim, i. e., that there is no provision for a pretermination hearing, appears to be correct.[7] Although the district court opinion indicated that § 3091 does provide for pretermination hearings, the language of the statute does not support such a reading, and counsel for the Commissioner conceded at oral argument of this appeal that in fact there is no provision for hearings prior to termination of benefits. Thus, the administrative remedies that are available to Ambrose follow, rather than precede, the denial of benefits. It is the fact that the remedies are not available prior to the denial or termination that Ambrose attacks. As stated in Mathews v. Eldridge, supra, and implicitly recognized in Barry v. Barchi, supra, the "claim to a predeprivation hearing as a matter of constitutional right rests on the proposition that full relief cannot be obtained at a postdeprivation hearing." Mathews v. Eldridge, supra, 424 U.S. at 331, 96 S.Ct. at 900, 47 L.Ed.2d 18. This is precisely the thrust of Ambrose's complaint: posttermination remedies can neither forestall nor compensate for an unwarranted termination of rehabilitation services. Given this attack on the constitutional adequacy of the remedies that are available, we conclude that it would be pointless to require Ambrose to exhaust those remedies.
 
 
 32
 Moreover, the limited scope of the relief available through the Vermont procedures convinces us that exhaustion of those remedies should not be required in the present case. In addition to seeking benefits for himself, Ambrose requests declaratory and injunctive relief for the benefit of a large class of persons seeking rehabilitation aid from VRD; this relief could not be assured by pursuit of administrative remedies even if Ambrose were to prevail before the Board. Although § 3091 empowers the Board to consider whether VRD regulations violate federal law and to "reverse or modify, decisions of the agency based on regulations which the board determines to be in conflict with ... federal law," it does not authorize the Board to invalidate or modify the offending regulations. And while counsel for the Commissioner stated at oral argument that he believed VRD would, in subsequent cases, alter its practices to conform with a Board decision upholding Ambrose's challenges, he conceded that a Board finding that Ambrose was entitled to a pretermination hearing would not actually be binding on VRD in any subsequent case.[8]
 
 
 33
 This case, then, raises the possibility of a situation similar to that presented in Jones v. Califano, 576 F.2d 12 (2d Cir. 1978). In Jones, plaintiffs brought a class action challenging the method by which certain Supplemental Security Income ("SSI") benefits were calculated. Although on several occasions the Appeals Council of the Social Security Administration ("SSA") had invalidated this method of calculation in the course of individual administrative appeals, the Secretary had not altered the method of calculation. The district court dismissed the complaint on the ground that exhaustion is a statutory prerequisite to the prosecution of SSI claims in federal court and was a particularly appropriate requirement in view of the likelihood that the administrative appellate process would result in a decision favorable to the SSI claimant. We reversed, largely because the relief available through the administrative appeal was inadequate to assure evenhanded treatment of the class on whose behalf relief was sought:
 
 
 34
 There is no provision for class relief in the administrative process under SSI-Title XVI. Thus, if we were to hold that the District Court lacks jurisdiction, the Secretary would be permitted to require each individual separately to exhaust his administrative remedies. Assuming that the Appeals Council continues to rule in favor of claimants, judicial review could be foreclosed entirely. The SSA could operate indefinitely ... with two standards ..., one for claimants who seek review by the Appeals Council, and one for claimants who do not.
 
 Id. at 19 (footnote omitted).[9]
 
 35
 The Commissioner urges that under state law his policies must be applied uniformly, and that "(n)o showing has been made in the case at bar that an administrative determination adverse to VRD would not be applied in an evenhanded manner." The Commissioner asks, in effect, that we require Ambrose to bring his claim before the Board and then permit VRD the opportunity in subsequent cases to conform, voluntarily, to an order that it is not bound to follow. Under the circumstances, and without questioning the good faith of the Commissioner, we decline to require that Ambrose follow this route, since we are not "positively assured," Morgan v. LaVallee, supra, that the administrative machinery is adequate to grant the requested relief.
 
 
 36
 Since the district court concluded that Ambrose's claim was barred by the exhaustion doctrine, it did not determine whether Ambrose is, in other respects, a suitable class representative or whether the class, as proposed or with modifications, meets the other requirements of Rule 23. Accordingly, we express no view on the proper resolution of these issues,[10] but remand for reconsideration of Ambrose's petition to intervene and for such further proceedings as may thereafter be appropriate.
 
 
 37
 Reversed and remanded.
 
 
 
 [1]
 Swan also sought, without elaboration, to base jurisdiction on 28 U.S.C. § 1337 (Supp. II 1978), which gives the district courts original jurisdiction over any civil action arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies
 
 
 [2]
 Prior to 1978, this section was designated § 706(6). Amendments to the Act in 1978 resulted in changes in the numbering of some of the sections. Although appellants cite to the pre-1978 section numbers, references in this opinion are to post-1978 section numbers
 
 
 [3]
 The complaint also alleged that VRD's eligibility standards and its consultation and program review procedures conflicted with the standards and procedures required by the Act and thus violated the Supremacy Clause of the Constitution
 
 
 [4]
 According to VRD's 1975 Training Package for Beginning Rehabilitation Counselors, a case is placed in "eligibility determination" status as soon as the application has been completed and signed by the applicant. The case remains in this status while the rehabilitation counselor gathers and evaluates pertinent data, using medical facilities and consultants if necessary, to determine whether the applicant meets criteria either for eligibility or for extended evaluation
 
 
 [5]
 Ambrose, too, alleged that various VRD procedures conflicted with the Act and thus violated the Supremacy Clause
 
 
 [6]
 Appellants urge, however, that "despite the evaporation of named plaintiff Swan's claim," Swan presented sufficient data to the court to justify class certification and that "there continues to exist a large class of persons having concrete adversity of interests and a live controversy with defendant." (Brief on appeal at 30.) To the extent that appellants' argument is that Swan's death does not moot the class claim if one of the proposed intervenors can be substituted as a named plaintiff, we agree. The timeliness of intervention should be measured as of the time the application to intervene was made, see 3B Moore's Federal Practice P 24.13(1) (1980), and Swan's death did not moot that application. If intervention is allowed, we see no reason why class certification, assuming the existence of a proper class, may not be made if the intervenor would be a proper class representative
 To the extent that appellants' argument is that Swan's death would not moot the class claim even in the absence of any intervenor or substitute named plaintiff, we disagree. As a general rule, a class action cannot be maintained unless there is a named plaintiff with a live controversy both at the time the complaint is filed and at the time the class is certified. Sosna v. Iowa, 419 U.S. 393, 402, 95 S.Ct. 553, 558, 42 L.Ed.2d 532 (1975). The general rule is not without exceptions. See, e. g., Gerstein v. Pugh, 420 U.S. 103, 110 n.11, 95 S.Ct. 854, 861 n.11, 43 L.Ed.2d 54 (1975), and Sosna v. Iowa, supra, 419 U.S. at 400-401, 95 S.Ct. at 557-558, 42 L.Ed.2d 532 (class action appropriate where issue raised, by its nature, is "capable of repetition, yet evading review"); Frost v. Weinberger, 515 F.2d 57, 64 (2d Cir. 1975), cert. denied, 424 U.S. 958, 96 S.Ct. 1435, 47 L.Ed.2d 364 (1976), and Jones v. Califano, 576 F.2d 12 (2d Cir. 1978) (class action appropriate where defendant, by granting relief to successive named plaintiffs, could avoid constitutional challenge). A significant characteristic of each of these cases is that the mootness of the plaintiff's claim resulted from the elimination of a factor closely related to the essence of the claim. Thus, in Sosna, a year passed while a one-year durational requirement was being challenged. Similarly the claim in Gerstein v. Pugh involved a status that was "by nature temporary," and which, predictably, ended. 420 U.S. at 110 n.11, 95 S.Ct. at 861 n.11, 43 L.Ed.2d 54. In Frost, the defendant's granting of benefits was precisely the individual relief that was requested. Thus, the cases embodying the exception to the general rule of mootness involved issues that were likely to evade review, no matter who prosecuted them. The alleged mootness in the present case is of a different sort. Swan died, and his death has no particular relationship to the claim at issue here. There is nothing inherent in the claim of a right to a hearing prior to termination of rehabilitation services that suggests that any member of the prospective class will not live to prosecute the issues to conclusion. Thus we do not view Swan's claims as pressing an issue that is, by its nature, likely to evade review. And if no proper intervenors sought to be substituted as named plaintiffs we would see no sound basis for certification of Swan's claims as a class action.
 
 
 [7]
 There may be a dispute as to whether in fact there was a termination. See text following note 3, supra
 
 
 [8]
 We also find no merit in the Commissioner's argument, not passed upon by the district court, that Ambrose was required to exhaust his federal administrative remedy under the Act, 29 U.S.C. § 722(d)(2). That section provides, in pertinent part as follows:
 Any handicapped individual ... who is not satisfied with the final decision made ... by the Director of the designated state unit may request the Secretary to review such decision. Upon such request the Secretary shall conduct such a review and shall make recommendations to the Director as to the appropriate disposition of the matter.
 (Emphasis added.) As the statutory language itself indicates, this provision in no way assures that Ambrose, even if he prevailed before the Secretary, would obtain the requested relief, either for himself or for the class.
 
 
 [9]
 The Commissioner argues that the mere allegation that a class exists should not relieve a plaintiff from the exhaustion requirement. We do not suggest that whenever an administrative agency lacks authority to offer class-wide relief a plaintiff can avoid the administrative exhaustion requirement merely by adding to his request for individual relief a claim for broad injunctive and declaratory class relief. Nothing in this opinion precludes a district court from considering whether, on the facts of a particular case, the class claim has been added merely to avoid the exhaustion requirement or whether a favorable administrative ruling in one case would result in relief for the class despite the absence of an administrative class action mechanism
 
 
 [10]
 Nor do we express any view as to the merits of Ambrose's constitutional claim