Walter L. JONES, Walter L. Jones Development Corporation, Plaintiffs,

v.

NIAGARA FRONTIER TRANSPORTATION AUTHORITY (NFTA), Urban Mass Transportation Administration (UMTA) New York State Department of Transportation (NYSDOT), Neal Cavanaugh & Siegfried Construction Co., Inc., John Sanders & Slattery Associates, Inc., Darling, Herbert F. and Earl Francis & John W. Cowper Co., Inc., S. H. Bartholomew & Fruin/Colnon/Tom Trayler and Traylor Bros., William Sterling & Onyx Equipment Co., Victor Scaravilli & S. & M. McHugh Kenney, Oscar Rayford & Universal Supply Equipment & Construction Co., John M. Fuhrmann & Construction Industry Employers Association, Edward Cole & Tresco Distributions, Carmen A. Gallo & Amiga Construction, Emanuel Humes & Humes Contracting Co., Joseph Myles & Trash Land Trucking, Robert Chester & Keystone Steel, Robert L. Pitts & P & S Supply, James Lyels & L & W Concrete, DeVilus Gray & Aftco International Trading Company, Paul Harrison & Downtown Dump Truck Service, Dean Williams & Native American Construction Co., William Taborn & Nelson Peters, Associates, Donald J. Blair & Building Trades Council of Buffalo & Vicinity, Ronald M. Fino & Laborers Local Union No. 210, Joseph F. Colern & Michael Fitzpatrick, Iron Workers Local Union No. 6, Leonard S. Coniglio & Cement Mason's Local Union No. 511, Herman F. Bodewes & Carpenters District Council, Leo Hopkins & Operating Engineers Local Union Nos. 17, 17A, 17B, Lawrence J. Stroh & National Electrical Contractors Assc., Plumbing Contractors Association of Erie County, NY., Inc., Defendants.

No. CIV–80–1075E.

United States District Court,
W. D. New York.

Oct. 7, 1981.

Charles L. Davis, Buffalo, N. Y., for plaintiffs.

C. Donald O'Connor, Asst. U.S. Atty., Buffalo, N. Y., for UMTA.

Timothy J. Toohey, Buffalo, N. Y., for NFTA.

---

MEMORANDUM IN SUPPORT OF ORDER ENTERED AUGUST 28, 1981

ELFVIN, District Judge.

This civil rights action, commenced in the winter of 1980, revolves around the contracting practices of the Niagara Frontier Transportation Authority ("the NFTA") in the construction of the City of Buffalo's Light Rail Rapid Transit System ("the LRRT"). Plaintiff,[1] the Walter L. Jones Development Corporation, is a small, non-union general contracting firm which the NFTA has certified as a Minority Business Enterprise ("MBE"). The gravamen of the corporation's complaint is that defendants have individually and collectively discriminated against it by their refusal to award it prime contracts and to work with it on the LRRT construction project, thereby flouting their obligations under various provisions of the civil rights laws including, *inter alia,* the Fifth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1981, 1983, 1985, 2000d; section 19 (49 U.S.C. § 1615) of the Urban Mass Transportation Act ("the UMTA") of 1964, as amended (Pub.L. 95–599); and 400 C.F.R. § 23 *et seq.*

Immediately before the court is plaintiff's motion for a preliminary injunction. The corporation seeks to prevent the NFTA from awarding two contracts on the LRRT project to prime contractors other than itself. Not surprisingly, plaintiff also requests the court to order the NFTA to award these two contracts to itself.

The parties appeared in court Friday, August 21, 1981. Following oral argument I ordered the NFTA to refrain from taking further action regarding either of the disputed contracts. I also directed the parties to submit memoranda of law and to reappear in court on August 26, 1981 to provide additional relevant information.

I have carefully reviewed the parties' pleadings, affidavits, relevant exhibits and legal briefs. For the reasons discussed below, I find that plaintiff has failed to satisfy its burden of showing that it is entitled to the extraordinary and drastic preliminary relief it desires.

*Factual Background*

Each of the contracts at issue entails the "cut and cover" construction of an underground subway station on the 6.4 mile LRRT system. Contract No. 1B4021 encompasses the substation at Allen and Main Streets and Contract No. 1B4032 involves the substation at Summer and Best Streets. These two construction jobs are apparently the last of seventeen prime contracts on the LRRT project to be awarded by the NFTA and approved by the UMTA. Once Contracts Nos. 1B4021 and 1B4032 are granted, the bidding and contracting process will be finished; no other contracts are to be awarded. Only the actual construction work will remain to be completed.

It is undisputed that plaintiff submitted a bid of $10,418,487.50 for Contract No. 1B4032. Such bid was the fifth lowest of the bids, but extremely close to the engineer's estimate of $10,418,899.50. John W. Cowper Co., Inc. the low bidder, submitted a bid of $9,885,000.00. According to the parties, the NFTA awarded Contract 1B4032 to Cowper August 10, 1981. The final agreement has not yet been signed by all the parties, still needing the imprimatur of the NFTA's Contracting Officer.

---

1. Notwithstanding plaintiff's Second Amended Complaint, filed August 20, 1981, Walter L. Jones is no longer a plaintiff in this lawsuit. I, in my Order entered April 22, 1981, dismissed his claims because he lacked legal standing to press them.

Contract No. 1B4021 has not yet been awarded.[2] However, the attorney for the NFTA indicated at oral argument August 21, 1981 that his client intended to award the prime construction contract to Albert Elia Building Co., Inc. Submitting a bid of $11,196,328.00, Elia was the second lowest bidder for the contract. Plaintiff was the low bidder with a bid of $8,725,292.00. The engineer's estimate for Contract No. 1B4021 was $9,640,016.73.

With neither contract bid did plaintiff submit a 10% bid bond as required of all bidders by the bid specifications. According to the affidavit submitted by Theodore Beck, General Manager of the Metro Construction Division of the NFTA, plaintiff's failure to do so was a major reason its bids were rejected by the NFTA. A second critical consideration for denying plaintiff either contract appears to be NFTA's perception that plaintiff is not a "responsible and responsive" bidder. According to affiant Beck, the NFTA drew its conclusion from plaintiff's lack of sufficient financial resources (plaintiff had a total of $974 in corporate cash as of April 30, 1981), lack of necessary equipment (less than $50,000 worth) and lack of major contracting experience (according to plaintiff's experience questionnaire, the corporation has not engaged in a construction project valued at more than $136,000 in the past five years). Although plaintiff conceded at oral argument August 26, 1981 that it was a "broke" corporation, it strenuously rejected NFTA's contention that it was incapable of performing either of the contracts.

*Law*

As a threshold matter, defendants contend that plaintiff has failed to exhaust the administrative grievance procedures available to it under 49 C.F.R. § 23.73. As such, defendants maintain, plaintiff is precluded from seeking judicial redress.[3]

■ Defendants' argument is without merit for several reasons. Initially, whatever else may be the case with respect to other types of lawsuits, civil rights actions are barred for failure to exhaust available administrative remedies only in limited circumstances. The United States Court of Appeals for the Second Circuit has held that conditions appropriate thereto include the assured existence of "speedy, sufficient and readily available administrative remedies remaining open to pursue." *Swan v. Stoneman*, 635 F.2d 97, 103 (2d Cir. 1980) (*citing Morgan v. LaVallee*, 526 F.2d 221, 224 (2d Cir. 1975)). Such administrative procedures must provide for representation by counsel, testimony under oath and the power to subpoena witnesses and papers, *Gonzalez v. Shanker*, 533 F.2d 832, 837 (2d Cir. 1976), and must include adequate procedures for the resolution of factual questions. *Plano v. Baker*, 504 F.2d 595, 598 (2d Cir. 1974); *Swan v. Stoneman, supra*, at 104. Finally, exhaustion is unnecessary if the administrative remedy is inadequate to vindicate the complainant's rights. *Riley v. Ambach*, (2d Cir., 1981); *Patton v. Dumpson*, 498 F.Supp. 933, 940 (S.D.N.Y.1980).

■ Many of these components of a wholly adequate grievance procedure are not present in this case. The procedures outlined in 49 C.F.R. § 23.73 provide only a mechanism through which a grievant can file a written complaint which will trigger a unilateral investigation by the Secretary of Transportation. 49 C.F.R. § 23.73(b). If the Secretary finds failure to comply by the recipient (*e. g.*, the NFTA) conciliation procedures may be initiated by the Secretary with the recipient. 49 C.F.R. §§ 23.73(d), 23.81. If conciliation efforts are unsuccessful, the Secretary can take steps to terminate the recipient's federal financial assistance.

Under the termination regulations, the recipient must be afforded a full hearing with adequate due process procedures. 49 C.F.R. §§ 23.73(d), 23.83, 21.15–.19. The hearing procedures are utilized only when

---

2. I enjoined any further action by defendants with respect to Contracts 1B4032 and 1B4021 at oral argument August 21, 1981.

3. Defendants offer no legal authority to support their position.

the Secretary determines that the recipient's federal financial assistance must be suspended. There is no indication or implication that the hearing procedures extend to grievances submitted by aggrieved individuals or Minority Business Enterprises.

In addition, the numerous documents plaintiff submitted into evidence August 26th demonstrate that following the grievance procedures would be a futile gesture on its part. On several occasions in 1979, plaintiff wrote to various officials in the UMTA and the Department of Transportation ("the DOT") about the alleged discriminatory conduct of the NFTA.[4] The responses to the letters were generally sympathetic to plaintiff's concerns, but did not purport to take any affirmative steps.[5] Although the Minority Business Enterprise regulations had not been promulgated at the time,[6] the UMTA's Internal Minority Business Enterprise Policy and Requirements for Grant Recipients, Circular 1165.1, December 30, 1977, was in effect and provided for many of the same forms of assistance which plaintiff claims it is currently being denied. Plaintiff's letters in 1979 were official grievances for all practical purposes, regardless of the absence of precisely applicable regulations. The NFTA has offered virtually the same reasons for its refusal to award plaintiff a contract on every one of its earlier low bids. Plaintiff fully apprised the UMTA and the DOT of these reasons in its letters. To require plaintiff to exhaust its administrative remedies as to every contract award about which it complains, as defendants urge, would create a nightmarish treadmill for a complaining MBE, which type of entity the regulations were intended to protect.

In any event petitioner submitted a complaint letter to the UMTA April 17, 1981 subsequent to the implementation of the grievance regulation.[7] UMTA's response of May 7, 1981 was that, due to the pendency of this lawsuit, it could not investigate plaintiff's charges.[8] The exhaustion of administrative remedies doctrine was not intended to create the frustrating situation faced by plaintiff by virtue of the UMTA's response.

As a final response to defendants' exhaustion argument, plaintiff maintains that, where a preliminary injunction is sought to prevent immediate harm, exhaustion of administrative remedies is not required. This proposition has at least some support in a recent case based on Title VI of the Civil Rights Act, 42 U.S.C. § 2000d, one of the same statutes asserted in this case. In *Bryan v. Koch*, 627 F.2d 612 (2d Cir. 1980), plaintiffs moved for a preliminary injunction to prevent the closing of a public hospital. Although the court ultimately affirmed the district court's denial of plaintiff's request, it held that:

> "The Title VI plaintiff can secure a preliminary injunction against threatened discrimination by showing a probability of success on his Title VI claim and irreparable injury. He need not await an administrative inquiry * * *." 627 F.2d at 620.

As plaintiffs did in *Bryan v. Koch*, the plaintiff here alleges immediate threatened discrimination coupled with irreparable harm. For this reason and for the reasons discussed above, I find that plaintiff need not further exhaust the existing administrative grievance procedures in order to pursue its request for a preliminary injunction from this court.

■ Although overcoming the exhaustion of administrative remedies hurdle, plaintiff must still meet the stringent test for obtaining preliminary injunctive relief. In this circuit, a moving party must demonstrate:

> "possible irreparable injury *and* either (1) probable success on the merits *or* (2) suf-

---

**4.** See, Plaintiff's Exhibits A, B, C, E & G.

**5.** See, Plaintiff's Exhibits D, F & H.

**6.** The applicable regulations were implemented April 27, 1980.

**7.** *See* Plaintiff's Exhibit H.

**8.** *See* Plaintiff's Exhibit I.

ficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting relief." *Caulfield v. Board of Education of the City of New York*, 583 F.2d 605, 610 (2d Cir. 1978).[9]

*See, also, Bryan v. Koch, supra*, at 620. The burden on plaintiff is a heavy one, and can be surmounted only by a clear and convincing showing that the requisite elements exist. *Yakus v. United States*, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944).

The LRRT system is one of the largest public construction projects to be undertaken in the City of Buffalo in recent years. The project has been underway since 1979. According to plaintiffs and undisputed by defendants, the NFTA has awarded a total of seventeen LRRT prime contracts. Plaintiff was the low bidder for five of the seventeen. Nevertheless, plaintiff has not been the awardee of any of them.

The two contracts in dispute for purposes of this motion, Nos. 1B4032 and 1B4021, are said to be the last of the LRRT's seventeen contracts. Plaintiff was the fifth lowest bidder on 1B4032 and the lowest bidder on 1B4021. Nevertheless, as indicated *supra*, p. 236, the NFTA has decided to by-pass the plaintiff and to award the contracts to other prime contractors. Plaintiff protests that it will be irreparably harmed if these contracts are assigned to the other contractors, allegedly in violation of its constitutional and statutory rights, because there are no other contracts on which to bid in the LRRT project. Its opportunity to work and acquire priceless contracting experience on the LRRT will be immutably lost. Arguably, such lost experience cannot be adequately compensated for by money damages. *See, Buffalo Forge Co. v. Ampco-Pittsburgh Corp.*, 638 F.2d 568, 569 (2d Cir. 1981); *Jackson Dairy, Inc. v. H. P. Hood & Sons*, 596 F.2d 70, 72 (2d Cir. 1979).

There is much validity to plaintiff's arguments. The paramount thrust of 42 U.S.C. § 2000d, 49 U.S.C. § 1615, and the corresponding Minority Business Enterprise regulations is to enable minority contractors to "stick their foot in the door" of the often exclusive enclave of contracting and construction work. *See, Fullilove v. Klutznick*, 448 U.S. 448, 459, 100 S.Ct. 2758, 2765, 65 L.Ed.2d 902 (1980); 1978 U.S.Code Cong. & Ad.News 6575, 6647; 49 C.F.R. § 23.1(a); Summary of Regulations for Participation by Minority Business Enterprise in Department of Transportation Programs, 45 Fed. Reg. 21172–84 (March 31, 1980). Congress believed that special affirmative action policies were necessary because minority businesses have often been prevented from obtaining contracts in the first instance due to their lack of experience and concomitant inability to obtain financing. To a minority contractor such as plaintiff, the experience gained from working on the LRRT would be an invaluable asset separate and apart from any income gained from the job. Its loss constitutes irreparable harm in the context of this motion.

On the other hand, the same cannot be said of the purported harm arising from plaintiff's second basis for relief, namely, NFTA's alleged refusal to assist plaintiff in bidding on and performing the contracts as required by federal regulations. 49 C.F.R. § 23.45. The regulations provide that a recipient of a Department of Transportation financial assistance grant must comply with relevant federal regulations, including those relating to the Minority Business Enterprise program. *See*, 49 C.F.R. §§ 23.2, 23.41(a), 23.45. Among other duties, a recipient "shall develop and use affirmative action techniques to facilitate MBE participation in contracting activities." 49 C.F.R. § 23.45(c). Among such techniques are:

---

9. Defendants insist that under *Union Carbide Agricultural Products, Inc. v. Costle*, 632 F.2d 1014, 1017–18 (2d Cir. 1980), the first test is the only one applicable in a public contracts situation. Even if true, *Union Carbide* is inapposite in this case. First, the crux of plaintiff's claims is unconstitutional race discrimination; this ac-

tion is not merely a challenge to the procedural or technical aspects of public contract administration. Second, plaintiff in *Union Carbide* sought to prevent stated governmental policy from being implemented. Here, plaintiff seeks to enforce compliance with specific governmental policies.

"Providing assistance to MBEs in overcoming barriers such as the inability to obtain bonding, financing, or technical assistance." 49 C.F.R. § 23.45(c)(2). On its face, 49 C.F.R. § 23.45(c)(2) is not an optional provision. The section does not state that a recipient may elect among the various suggestions. Nor is it clear that an MBE must make an initial request for assistance as a condition precedent to a recipient's obligations. Furthermore, notwithstanding the NFTA's argument to the contrary, its assistance obligations apply to both MBE prime and subcontractors. 49 C.F.R. § 23.45(c). In short, the NFTA's obligation to provide assistance to MBEs such as plaintiff is irrefutable.

Plaintiff asserts that, despite its request for assistance (see, Letters from Walter L. Jones to the NFTA's Board of Commissioners, June 24, 1981, July 9, 1981, and August 3, 1981), the NFTA never responded or provided any such assistance. In neither its pleadings nor at oral argument did the NFTA deny that it had not offered or provided such assistance to plaintiff. On the contrary, defendants' affiant Beck states perfunctorily that "regardless of any reasonable assistance provided by the Authority including waiver of bid bond requirements the Plaintiff would be unable to perform the contract pursuant to the bid specifications." (Beck Affidavit, ¶ 19.)

Defendants' statements smack of disingenuousness especially in the context of contract 1B4021 on which plaintiff was the low bidder by a margin of $3,471,036. It would be eminently reasonable for the NFTA to work particularly aggressively to help plaintiff obtain the requisite bid and performance bonding in order to accrue more than $3 million in savings on this contract.[10] By the same token affiant Bulow's statement that "[p]laintiff has been afforded the same assistance that is provided to all MBEs * * *" (Bulow Affidavit, ¶ 11) is singularly revealing. Compared to the assistance provided to plaintiff, it is easily inferred that the NFTA has failed to provide assistance to any of its MBEs notwithstanding its legal responsibility to do so.

I find it ironic that plaintiff's lack of bonding is a major reason asserted by the NFTA for its refusal to award plaintiff a contract when the NFTA had refused to help plaintiff obtain bonding in apparent derogation of its duty under federal regulations. Nonetheless, the NFTA's refusal to provide such assistance does not constitute, per se, the irreparable harm necessary to warrant preliminary injunctive relief. Plaintiff must demonstrate clearly that actual and imminent harm will result from defendants' refusal to perform its duty if preliminary relief is not granted. *State of New York v. Nuclear Regulatory Commission*, 550 F.2d 745, 753–54 (2d Cir. 1977). Although the threatened harm need not be absolutely certain to occur, it must be more than merely remote and speculative. *Id.*, at 755.

In the instant case, it is not at all clear what actual harm, if any, plaintiff will suffer if preliminary injunctive relief as to the MBE assistance provisions is denied. Plaintiff has not explained what sort of help it was entitled to receive. The regulations plainly require a recipient to provide assistance to an MBE; they do not, however, require the recipient to guarantee that the assistance will necessarily result in a successful contract award to the MBE. It is not inconceivable that, despite a recipient's

---

10. Arguably, defendants might be excused from providing financing assistance to plaintiff with respect to its bid on 1B4032 inasmuch as there were four presumably eligible contractors who submitted lower bids than did plaintiff. On the other hand, the applicable regulations do not limit to low bidders the provision of assistance.

Plaintiff further contends that the regulations provide that, if an MBE submits a bid within 5% of the lowest bid, it must be considered as the low bidder. By this analysis, plaintiff's bid on 1B4032 would be considered the low bid. Plaintiff has provided no authority on this point, however, and I can find none. Under 49 C.F.R. § 23.43(i) there are procedures to ensure that bidders who meet the MBE contract goal in their bids obtain the contract if the bid is reasonable. There is no allegation by plaintiff, however, that the bidders who were awarded the contracts failed to meet such goal.

best efforts, no financing institution will guarantee a particular MBE's bid or performance because of the MBE's past poor performances. Even if the NFTA had helped plaintiff try to obtain the requisite bonding, there is no showing that plaintiff would have obtained any bonding, much less the level of bonding required by the specifications. Even if the NFTA's assistance had enabled plaintiff to obtain the requisite bonding, there is no showing that plaintiff would have been able to make sufficient and timely arrangements to perform the contract successfully.

It is evident from these and other speculative scenarios that the only apparent irreparable harm to plaintiff would result directly not from the NFTA's refusal to assist plaintiff pursuant to 49 C.F.R. § 23.-45, but rather from plaintiff's failure to acquire the contracts. Such injury is simply far too tenuous and remote from the NFTA's failure to comply with the MBE assistance regulations to comprise the irreparable harm essential to justify preliminary relief as to this claim.

Having established that it will be irreparably harmed if defendants' alleged discriminatory refusal to award it a contract is not enjoined, plaintiff must further show that the balance of the applicable test has been satisfied for preliminary relief to be granted. Plaintiff must demonstrate clearly either that it is likely to prevail on the merits, or that there are serious questions of law and fact *and* the balance of hardships tips decidedly in its favor. *Caulfield v. Board of Education of the City of New York, supra,* 583 F.2d at 610. A close examination of plaintiff's discrimination claims reveals that plaintiff has failed to pass either test.

Plaintiff asserts it was not awarded either of the two contracts because the NFTA unconstitutionally discriminated against it as a minority prime contractor. Without assessing the validity of plaintiff's race discrimination claims, I nonetheless am constrained to find that the facts are not as straightforward as plaintiff suggests.

Plaintiff contends that the NFTA's persistent refusal to award it the contract for which it was the low bidder coupled with the NFTA's failure to help it obtain bonding and financing provides unequivocally that defendants discriminated against it. Plaintiff buttresses its argument by asserting that no local valid Minority Business Enterprise has yet been awarded a prime contract on the project, although plaintiff, as a local certified Minority Business Enterprise, has been the low bidder on several occasions. (Walter Jones's Affidavit in Support of Preliminary Injunction, ¶ 6B.)

Such assertions would seem to be persuasive evidence of discrimination until compared with the affidavits submitted by defendants. According to their affiants, the NFTA has surpassed its Minority Business Enterprise UMTA-approved goal of 12.2%. Of the $135,316,629 in contracts awarded thus far, work totalling $20,279,-916 or 15% has been awarded to valid MBEs. William Bulow, Director of Affirmative Action for the NFTA, also swears that the NFTA has afforded plaintiff the same assistance that is provided to all MBEs and that the NFTA has taken all steps necessary to comply with its obligations under its Minority Business Enterprise Plan. While these last two statements can be accepted only for what they are, namely bald, general conclusions, the asserted 15% rate of MBE participation certainly undermines to a substantial extent plaintiff's race discrimination claims.

Furthermore, although plaintiff's failure to submit a bond was admittedly one reason it was denied a contract (*See* Beck, Affidavit ¶ 7), it was not the only asserted reason. According to Beck, the General Manager of the Metro Construction Division of the NFTA, plaintiff's lack of experience as demonstrated in its experience questionnaire and its severe lack of current financial assets, resources and equipment reflect its inability to fulfill adequately either of the $10 million contracts.

Defendants' affidavits are surprisingly devoid of any supporting documentation for their conclusions. Nevertheless, for pur-

poses of this preliminary injunction motion, it is not defendants' obligation to rebut conclusively every allegation raised by plaintiff. It is enough that defendants have raised sufficiently factual questions as to the merits of plaintiff's race discrimination claim so that it is not possible to say with assurance that plaintiff is likely to prevail.

In fact, both parties have raised more questions than they have answered. For example, what are the Minority Business Enterprises which are included in the 15% figure? Is Onyx Corporation, which was adjudged an MBE front in this court, included in these figures? In what aspects of which contracts have the MBEs participated? What exact steps has the NFTA taken to assure compliance with the Minority Business Enterprises regulations? What specific kinds of affirmative assistance did the NFTA provide to the MBEs who worked on the project? What experience has been required of successful (from the point of view of having been awarded work) prime contractors and subcontractors, both non-minority and MBE, to qualify them for awards of contracts? What minimum amount of corporate resources is needed to qualify non-minority and MBE contractors for contract awards?

These questions are critical to plaintiff's race discrimination claims. If the evidence reveals that other MBEs were utilized in conformance with federal law, then the burden on plaintiff to prove it was denied a contract solely by virtue of its status as a minority firm will be heightened. Similarly, if the evidence demonstrates there were valid reasons to deny plaintiff the contracts for which it was the low bidder, then plaintiff will have the burden of showing that these reasons were mere pretense.

■ These factual questions and others are not easily answered and will require extensive proof which has not yet been submitted. The very existence of such material questions of fact are enough to preclude a finding that plaintiff is likely to succeed on the merits of its race discrimination claim for preliminary injunctive purposes. *American Visuals Corporation v. Holland*, 219 F.2d 223 (2d Cir. 1955); *Eastin-Phelan Corporation v. Hal Roach Studios*, 350 F.Supp. 1328, 1332 (S.D.N.Y.1977); *see, Medical Society of State of New York v. Toia*, 560 F.2d 535, 538–39 (2d Cir. 1977); Wright & Miller, Federal Practice & Procedure § 2948 at 455–56 (1973).

■ Plaintiff's failure to meet its burden under the "likelihood of success" test does not necessarily preclude preliminary injunctive relief. If there are sufficiently serious questions of law and fact to make them fair grounds for litigation, and if the balance of hardships tips decidedly in plaintiff's favor, plaintiff would be entitled to some relief on its discrimination claim.

■ For purposes of this motion, I need not address the former question for plaintiff has clearly failed to succeed on the latter one. The NFTA asserts through its affiant Billy D. Spencer, Manager of Construction of the Metro Construction Division, the Authority could lose $15,000 for every day either of the contracts is delayed. While Spencer's statement is unsupported by any documentation, neither is it challenged by plaintiff. Moreover, I am sensitive to the costly repercussions and spillover effects which occur as a result of delays of a major construction project such as the LRRT. These costs were amplified in detail in open court when many of the parties were present on a previous motion for a preliminary injunction. *See,* Memorandum and Order entered April 27, 1981, at pp. 9–10.

In reply, plaintiff asserts that no significant delay will occur if it is awarded the contract for it can begin work immediately. However, I see no reason why plaintiff should be awarded a major $10 million contract without offering a performance bond, particularly when its financial stability is undeniably and concededly weak. The possible cost to the NFTA and the public if plaintiff were to proceed on this basis would be enormous if plaintiff were unable to fulfill its contractual obligations.

I therefore find that plaintiff has failed to show the balance of hardships tips decidedly in its favor so as to justify preliminary relief on its race discrimination claim. Whether the second prong of the applicable test has been satisfied is therefore moot. For this and the reasons discussed above, I find that plaintiff is not entitled to the extraordinary sanction of preliminary relief he seeks.[11]

11. In my Order entered August 28, 1981 I denied plaintiff's motion for a preliminary injunction in all respects. This Memorandum is in support thereof and speaks as of the date of said Order.