THE PEOPLE *ex rel.* THE DEPARTMENT OF TRANSPORTATION, Plaintiff-Appellee, v. COOK DEVELOPMENT COMPANY *et al.,* Defendants-Appellants.—COOK DEVELOPMENT COMPANY, Counterplaintiff-Appellant, v. THE PEOPLE *ex rel.* THE DEPARTMENT OF TRANSPORTA-TION *et al.,* Counterdefendants-Appellees.

First District (2nd Division)   Nos. 1—93—3056, 1—94—3044 cons.

Opinion filed July 11, 1995.

Rufus Cook and Barbara J. Revak, both of Cook Partners Law Offices, Ltd., of Chicago, for appellant.

Victoria P. Pappas, Special Assistant Attorney General, of D'Ancona & Pflaum, of Chicago, and Robert W. Hallock, Special Assistant Attorney General, of Lincolnshire, for appellees.

JUSTICE DiVITO delivered the opinion of the court:

The People of the State of Illinois *ex rel.* the Illinois Department of Transportation (IDOT) filed a claim against Cook Development Company (CDC) under the Illinois Forcible Entry and Detainer Act (Ill. Rev. Stat. 1989, ch. 110, par. 9—101 *et seq.* (now 735 ILCS 5/9—101 (West 1992))), for rent and possession of certain real estate and

improvements. CDC filed a multicount counterclaim. The circuit court granted IDOT's motion for use and occupancy and dismissed CDC's counterclaim for lack of subject matter jurisdiction. For the following reasons, we affirm the grant of use and occupancy, affirm the dismissal in part, and reverse in part.

IDOT owns certain commercial property containing abandoned grain elevators at Damen Avenue and I-55 on the Chicago River. CDC, a minority-owned company with Rufus Cook as its sole shareholder, began investigating the southern portion of the grain elevators for potential conversion into a cement storage and distribution facility in 1986. CDC alleged that it learned that American Fly Ash, a white-owned company, had been given free access to the north silo complex since August 1986 to enable its engineers to analyze and prepare plans for rehabilitation of those silos. In 1986, two other white-owned companies, Tri-River Docks and Barge Terminals, Inc., were allegedly occupying and using IDOT land and buildings, including property which CDC sought to lease, free of charge. CDC determined that conversion of the southern facilities would cost several hundred thousand dollars over a period of approximately two years and would require a pneumatic piping system which would traverse the north silo facility leased by American Fly Ash.

CDC sought a long-term lease of 10 years and the right to occupy the property free of charge on a preliminary basis to prepare rehabilitation plans. IDOT allowed CDC to inspect the property free of charge, but allegedly refused a prolonged occupancy without pay. IDOT allegedly offered CDC a 17-month lease with the oral assurance that a 10-year lease or a 5-year lease with an option to renew for 5 years would be made available. CDC and IDOT entered into a 17-month commercial lease for the south silos and the adjacent land and buildings described above on April 1, 1987 (the 1987 lease). IDOT later offered CDC a five-year lease, without an option for renewal, which was entered into on September 1, 1988, with a monthly rent of $3,865 (the 1988 lease). The 1988 lease provided that, in the event of default of any of the covenants in the lease, IDOT had the right to terminate the lease and repossess the premises.

CDC alleged that American Fly Ash and Barge Terminals continued to improperly occupy and damage portions of CDC's premises throughout the term of the lease. American Fly Ash's waste ash and Barge Terminal's excess gravel, stone, and sand allegedly clogged CDC's sewers, drains, and piping systems causing damage in excess of $400,000. CDC alleged that IDOT was also responsible for the damage in that it failed to control the behavior of its tenants. CDC ceased paying rent on November 1, 1989, yet continued to occupy the leased premises.

On October 3, 1990, IDOT filed a forcible entry and detainer complaint against CDC. CDC filed a seven-count counterclaim on November 18, 1991, alleging that the State had engaged in race discrimination in violation of 42 U.S.C. §§ 1981 and 1982 (counts I and II); IDOT Director Kirk Brown (Brown), in his official capacity, had violated United States Department of Transportation (USDOT) regulations (count III), and the fourteenth amendment to the United States Constitution and 42 U.S.C. § 1983 (count IV); the State and Brown had breached the covenant of quiet enjoyment, violated CDC's right to exclusive peaceful possession, and violated 42 U.S.C. §§ 1981, 1982, and 1983, and USDOT regulations (counts V and VI); and the State and Brown had breached a verbal agreement to grant CDC a five-year option to renew the 1988 lease and had violated USDOT regulations (count VII). The counterclaim sought injunctive relief, compensatory damages in excess of $1.7 million, punitive damages exceeding $2 million, and other relief.

On September 1, 1992, IDOT filed a motion requesting use and occupancy pending the outcome of the litigation. The court ruled that, by remaining on the premises, CDC obligated itself to pay rent. The court rendered a judgment for $162,300, based on the value of rental payments for the period of November 1, 1989, through April 30, 1993, and ordered CDC to pay IDOT $3,865 for each month that it continued to remain on the premises.

On July 27, 1993, the court dismissed the counterclaim without prejudice to its being refiled in the Illinois Court of Claims and applied Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)) language to its use and occupancy judgment.

I

CDC contends that the circuit court's grant of use and occupancy to IDOT, pursuant to the Forcible Entry and Detainer Act (735 ILCS 5/9—101 *et seq.* (West 1992)), for the period of November 1, 1989, through April 30, 1993, was erroneous because the statutory prerequisites for use and occupancy were not satisfied, the court did not consider an offset of recoupment, and use and occupancy may be awarded only on a prospective basis.

A

■ Under section 9—201(2) of the Forcible Entry and Detainer Act, a court may award use and occupancy "[w]hen lands are held and occupied by any person without any special agreement for rent." (735 ILCS 5/9—201(2) (West 1992).) CDC argues that a special agreement for rent, the lease, existed. CDC ceased paying rent on

November 1, 1989, yet continued to occupy the leased premises. A lessee's obligation to pay rent continues as a matter of law, even though the lessee may ultimately establish a right to rescind the lease, vacate the premises, or obtain other relief. (*Keating v. Springer* (1893), 146 Ill. 481, 496-98, 34 N.E. 805; *City of Chicago v. American National Bank* (1980), 86 Ill. App. 3d 960, 963, 408 N.E.2d 379.) Here, the lease provided that IDOT could cancel or terminate the lease without notice and that IDOT could enter and repossess the premises following a default by CDC of any of the covenants or agreements of the lease. Because one of the incidents of default was failure to pay rent, IDOT declared the lease terminated and filed an action for forcible eviction to regain possession. As the lease was no longer valid, CDC occupied the land without any special agreement for rent and the requirements of section 9—201(2) were satisfied.

■ CDC also argues that a full evidentiary hearing was required before the circuit court could find that the lease had been terminated. The only authority CDC cites is section 9—106 of the Forcible Entry and Detainer Act, which states, in relevant part:

"The defendant may under a general denial of the allegations of the complaint offer in evidence any matter in defense of the action." (735 ILCS 5/9—106 (West 1992).)

This section permits CDC to offer evidence, but in the absence of a proffer of evidence does not require an evidentiary hearing before use and occupancy are granted. Here, CDC proffered no evidence; thus, no evidentiary hearing was required.

### B

■ CDC also contends that the court erroneously failed to hold an evidentiary hearing to determine the reasonable value of use and occupancy, including any reduction for recoupment. CDC cites *Keating* (146 Ill. at 495-98) for the proposition that the issuance of a use and occupancy order without regard to the condition of the premises is erroneous. In *Keating*, the circuit court refused to admit evidence by a tenant that a nearby building erected by his landlord obstructed the sunlight. The Illinois Supreme Court found that the offered testimony should have been received "in order that any damages, which the defendant may have sustained thereby, might be recouped in reduction of the amount of recovery." (*Keating*, 146 Ill. at 497.) *Keating* requires the circuit court to accept offered evidence of recoupment, but it does not prevent a court from granting use and occupancy without considering recoupment. Although it brought a counterclaim against IDOT and others for breach of contract, CDC did not contest the reasonableness of the use and occupancy award or

request a hearing on recoupment. As the circuit court stated, "the lessee in this case has a counterclaim which will be heard in due course. If the lessee prevails in that counterclaim, the lessee will be entitled to money judgment." Accordingly, the circuit court did not erroneously deny CDC an evidentiary hearing on the reasonable value of the use and occupancy award.

## C

■ CDC argues that the circuit court can award use and occupancy only prospectively. The Forcible Entry and Detainer Act contains no such restriction, and CDC cites no authority for its argument. Furthermore, courts have awarded use and occupancy for periods preceding the action. (*Brackett v. Sedlacek* (1983), 116 Ill. App. 3d 978, 982-83, 452 N.E.2d 837.) As such, the award of use and occupancy dating back to the initial cessation of rental payments was not erroneous.

## II

IDOT contends that CDC's counterclaim was properly dismissed because (1) pursuant to the State Lawsuit Immunity Act, claims may not be brought against the State in circuit court; (2) actions may not be brought against the State in state court under 42 U.S.C. §§ 1981, 1982, and 1983; and (3) USDOT regulations do not provide a private cause of action.

## A. SOVEREIGN IMMUNITY

The State Lawsuit Immunity Act (Immunity Act) provides, in pertinent part, that "except as provided in '[An Act] to create the Court of Claims ***', *** the State of Illinois shall not be made a defendant or party in any court." (Ill. Rev. Stat. 1991, ch. 127, par. 801 (now 745 ILCS 5/1 (West 1992)).) The Court of Claims Act provides that the Court of Claims shall have exclusive jurisdiction to hear and determine "[a]ll claims against the state founded upon any contract entered into with the State of Illinois." (Ill. Rev. Stat. 1991, ch. 37, par. 439.8(b) (now 705 ILCS 505/8(b)(West 1992)).) In dismissing CDC's counterclaim for lack of subject matter jurisdiction without prejudice to its being refiled in the Court of Claims, the circuit court stated that all of CDC's claims were founded upon its lease entered into with the State of Illinois.

The mere existence of a contract with the State does not imply that a claim is founded upon that contract. (*Senn Park Nursing Center v. Miller* (1983), 118 Ill. App. 3d 733, 455 N.E.2d 162, *aff'd* (1984), 104 Ill. 2d 169, 470 N.E.2d 1029.) In *Senn Park*, numerous nursing centers

brought an action against the Director of the Illinois Department of Public Aid, with which they each had a contract, to prevent a change in the method of calculating allowable reported health care costs. The court held that the claims were not founded upon the contracts, but rather upon administrative rules and regulations. (*Senn Park*, 118 Ill. App. 3d at 745-46.) In the instant case, counts V, VI, and VII made direct reference to the lease and were brought for violation of the contract-based rights to exclusive possession and quiet enjoyment, as well as for breach of a verbal agreement to provide a five-year option to renew the lease. Although counts I, II, III, and IV did not mention the lease directly, each count alleged that IDOT and/or Brown failed to perform various acts, the duties of which were alleged to have arisen out of the lease. For example, counts I, II, III, and IV each alleged that IDOT and Brown improperly denied CDC rent-free preparation time which was extended to white-owned companies. Paragraph 45, incorporated by reference into each count, alleged that "among the 'specific steps' IDOT was required to take *in its role as lessor* *** was to extend to the minority companies [CDC] concessions *** at least comparable to those extended to the white-owned tenants ***, including a reasonable period of free access before the rent obligations began." (Emphasis added.) Accordingly, we find that counts I, II, III, and IV each incorporated the lease by reference, and the entire seven-count claim was predicated and founded upon the lease.

■ The Immunity Act applies only to actions against the State. All claims against IDOT fell within the Immunity Act and were appropriately dismissed because "a suit against the Illinois Department of Transportation is considered to be a suit against the State itself." *Magna Trust Co. v. Department of Transportation* (1992), 234 Ill. App. 3d 1068, 1070, 600 N.E.2d 1317, *appeal denied* (1992), 147 Ill. 2d 628, 606 N.E.2d 1227.

■ Counts III and IV were directed at Brown in his official capacity and counts V, VI, and VII were directed at Brown without reference to an official or individual capacity. IDOT contends that all of the claims against Brown should be considered claims against the State. "The determination of whether an action is in fact a suit against the State turns upon an analysis of the issues involved and the relief sought, rather than the formal designation of the parties." (*Currie v. Lao* (1992), 148 Ill. 2d 151, 158, 592 N.E.2d 977.) A claim against an agent or employee of the State, even if not sued in his official capacity, is deemed a claim against the State if: (1) there are no allegations that the agent acted outside the scope of his authority; (2) the duty which was allegedly breached is not owed to the public inde-

pendent of State employment; and (3) the complained-of actions are within the employee's normal and official functions. (*Management Association of Illinois, Inc. v. Board of Regents of Northern Illinois University* (1993), 248 Ill. App. 3d 599, 607, 618 N.E.2d 694.) CDC did not allege that Brown acted outside the scope of his authority; the claims against Brown were derived from his role in implementing CDC's lease contract with IDOT; and the alleged improper actions were within Brown's normal and official duties. As a result, we consider the allegations against Brown to be claims against the State.

■ Nevertheless, sovereign immunity provides no protection when an agent of the State is alleged to have acted in violation of statutory or constitutional law. (*Magna Trust*, 234 Ill. App. 3d at 1071.) The portions of counts III, IV, V, VI, and VII which alleged that Brown violated the United States Code and United States Department of Transportation regulations, promulgated under statutory authority, were not subject to sovereign immunity.

Other portions of counts V, VI, and VII contained contract-based allegations (respectively, the right to exclusive possession, the right to quiet enjoyment, and breach of a verbal agreement) which were not sufficient to deprive Brown of the protection of sovereign immunity and were appropriately dismissed. (*Magna Trust*, 234 Ill. App. 3d at 1071.) Thus, the Immunity Act effectively barred all claims raised against IDOT and those claims raised against Brown in counts V, VI, and VII which were based upon the lease contract.

■ CDC contends that the Court of Claims has no jurisdiction over claims which allege constitutional and civil rights violations because it does not provide for procedural mechanisms which are permitted under 42 U.S.C. §§ 1981, 1982, and 1983, *i.e.*, a jury trial, injunctive and other equitable relief, full compensatory damages, and a full right of appeal. CDC cites *Felder v. Casey* (1988), 487 U.S. 131, 101 L. Ed. 2d 123, 108 S. Ct. 2302, which addressed the dismissal of a state court action, brought against a police officer under 42 U.S.C. § 1983, for failure to satisfy the requirements of Wisconsin's notice-of-claim statute. The Court found that the statute, which contained more stringent notification requirements than the federal civil rights law, was preempted pursuant to the supremacy clause. The Court reasoned that Wisconsin's statute conflicted in purpose and effect with section 1983's objectives, and its enforcement in state actions would frequently and predictably result in a different outcome than if the action were brought in federal court. (*Felder*, 487 U.S. at 138, 101 L. Ed. 2d at 138, 108 S. Ct. at 2307.) In the instant case, the Immunity Act, in barring actions against the State, does not conflict with the purposes of section 1983 because Congress did not intend to

create a cause of action against States which could be brought in state court. (*Will v. Michigan Department of State Police* (1989), 491 U.S. 58, 66, 105 L. Ed. 2d 45, 55, 109 S. Ct. 2304, 2310.) Nor would the Immunity Act's enforcement result in a different federal court result because states are immune from prosecution in federal court under the eleventh amendment. *Kaimowitz v. Board of Trustees of the University of Illinois* (7th Cir. 1991), 951 F.2d 765, 767-68 (states are immune from actions under sections 1981, 1982, and 1983 in federal court).

Additionally, the procedural limitations in the court of claims do not violate constitutional guarantees of due process or equal protection. (*Seifert v. Standard Paving Co.* (1976), 64 Ill. 2d 109, 121, 355 N.E.2d 537, *overruled in part, Rosetti Contracting Co. v. Court of Claims* (1985), 109 Ill. 2d 72, 485 N.E.2d 332.) As the *Seifert* court explained (64 Ill. 2d at 121):

> "The procedures in the Court of Claims are inherently different from those in the circuit court because the Court of Claims serves an entirely different function."

And

> "[P]roceedings before the Court of Claims are not adversary in nature, and they are not designed to provide a trial. The General Assembly in providing for the Court of Claims and in establishing procedures for it intended to provide an orderly process for the presentation and deciding of claims against the State." 64 Ill. 2d at 121.

CDC also argues that the circuit court erroneously severed its counterclaim from the action for possession and back rent because the Forcible Entry and Detainer Act permits a defendant to join a counterclaim concerning a matter germane to the proceeding. (735 ILCS 5/9—106 (West 1992).) However, IDOT did not waive its sovereign immunity privilege by bringing an action against CDC. A party may not raise a counterclaim against the State in circuit court if the same action would ordinarily be barred by the Immunity Act. *People v. Patrick J. Gorman Consultants, Inc.* (1982), 111 Ill. App. 3d 729, 731, 444 N.E.2d 776.

### B. 42 U.S.C. §§ 1981, 1982, 1983

CDC raised claims against Brown for violation of section 1983 in counts III, IV, V, VI, and VII, and for violation of sections 1981 and 1982 in counts V, VI, and VII. As previously discussed, we consider all claims against Brown to be claims against the State (*Management Association*, 248 Ill. App. 3d at 607), and for purposes of federal statutory analysis, the claims are considered to have been brought against Brown in his official capacity.

■ Section 1983 creates a cause of action against persons who deprive others of their constitutional rights. The Supreme Court has declared that States are not persons within the meaning of section 1983, and section 1983 actions may not be brought against States in state court. (*Will*, 491 U.S. at 65-66, 105 L. Ed. 2d at 54-55, 109 S. Ct. at 2309-10.) The Court noted that state officials may be sued under their official capacity for prospective injunctive relief. (*Will*, 491 U.S. at 71 n.10, 105 L. Ed. 2d at 58 n.10, 109 S. Ct. at 2312 n.10.) Counts IV, V, VI, and VII sought to restrain Brown from committing further violations of section 1983.[1] All of the alleged violations related to the lease, and CDC no longer maintains possession of the leased premises. As a result, the requests for injunctive relief are moot, and the section 1983 counts against Brown were properly dismissed.

■ The Supreme Court has held that "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed" by section 1981 when the claim is pressed against a state actor. (*Jett v. Dallas Independent School District* (1989), 491 U.S. 701, 733, 105 L. Ed. 2d 598, 625, 109 S. Ct. 2702, 2722.) Congress subsequently overruled *Jett* by enacting the Civil Rights Act of 1991 (42 U.S.C. § 1981(c)(2) (1994)) and extending the ambit of section 1981 to state action. However, the Civil Rights Act did not become effective until November 1, 1991, and it is not to be applied retroactively. (*Ford v. City of Rockford* (N.D. Ill. 1992), 770 F. Supp. 462.) CDC argues that the section 1981 claims raised against Brown in counts V, VI, and VII alleged contract-based violations which were continuing in nature, thereby occurring after November 1, 1991. However, the lease terminated shortly after CDC ceased paying rent on November 1, 1989. As such, CDC did not have a valid claim, as of November 1, 1991, under count V for breach of the right to peaceful possession or under count VI for breach of the covenant of quiet enjoyment. Also, the alleged violation in count VII, breach of a verbal agreement to grant CDC a five-year option to renew the 1988 lease, was not continuing in nature. The claims under section 1981 were properly dismissed.

■ Concerning section 1982, IDOT, without citing precedential authority, seeks to apply the exclusive damages remedy rationale of section 1981 and have the section 1982 claims similarly barred. However, actions may be brought under section 1982 against States

---

[1]Count III, which alleges violations of section 1983, seeks injunctive relief for violations of the Code of Federal Regulations, but not section 1983 violations. Accordingly, the section 1983 claim against Brown in count III was properly dismissed.

and their instrumentalities for damages and equitable relief. (*Baker v. F&F Investment Corp.* (7th Cir. 1973), 489 F.2d 829, 833; *Sullivan v. Little Hunting Park, Inc.* (1969), 396 U.S. 229, 24 L. Ed. 2d 386, 90 S. Ct. 400.) Accordingly, we find that the circuit court erred in dismissing counts V, VI, and VII against Brown for violations of section 1982.

## C. USDOT REGULATIONS

CDC raised claims against Brown in counts III, V, VI, and VII for violation of USDOT regulations, 49 C.F.R. subtitle A, parts 21 *et seq.* and 23 *et seq.* IDOT contends that no private cause of action is available under those Code of Federal Regulations sections. CDC cites one case, *Jones v. Niagara Frontier Transportation Authority (NFTA)* (W.D. N.Y. 1981), 524 F. Supp. 233, in which a certified minority business enterprise (MBE) brought a cause of action under 49 C.F.R. part 23, subpart C, seeking a preliminary injunction to prevent a transportation authority from awarding two contracts to contractors other than itself. The court addressed the claim without questioning whether a private cause of action was provided under the regulation.[2]

While 49 C.F.R. parts 21 and 23 do not expressly create a private cause of action, an implied cause of action can be found through an examination of the regulations. (*Smith v. Dearborn Financial Services, Inc.* (6th Cir. 1993), 982 F.2d 976.) The following factors are to be considered in determining whether a private cause of action is implied:

(1) is the plaintiff of the class for whose special benefit the statute was enacted?

(2) is there any explicit or implicit indication of legislative intent to either create or deny such a private right of action?

(3) is implication of a private cause of action consistent with the underlying purposes of the legislative scheme?

(4) is the cause of action one that is traditionally relegated to state law so that a federal cause of action would be inappropriate?

(*Cort v. Ash* (1975), 422 U.S. 66, 78, 45 L. Ed. 2d 26, 36, 95 S. Ct. 2080, 2088.)[3] The stated purpose of part 21 is "to effectuate the provisions of title VI of the Civil Rights Act of 1964 *** to the end that no

---

[2]Relief was denied for failure to show irreparable harm necessary to warrant a preliminary injunction. *Jones,* 524 F. Supp. at 239.

[3]The *Cort* test speaks of statutory analysis, and parts 21 and 23 are regulations promulgated pursuant to various statutes. When a plaintiff pleads a cause of action arising from a regulation, the regulation is the text from which to interpret intent. *Mikkilineni v. United Engineers & Construc-*

person in the United States shall, on the grounds of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination under any program or activity receiving Federal financial assistance from the Department of Transportation." (49 C.F.R. § 21.1 (1994).) The stated purpose of part 23 is "to carry out the Department of Transportation's policy of supporting the fullest possible participation of firms owned and controlled by minorities and women, (MBEs) in Department of Transportation programs. This includes assisting MBEs throughout the life of the contracts in which they participate." 49 C.F.R. § 23.1 (1994).

Here, the first part of the *Cort* test is satisfied under part 21 because CDC alleged that it was subject to discrimination on the grounds of race by IDOT (acting through Brown), a recipient of US-DOT funds. Likewise, CDC, as an MBE participating in an IDOT program, is part of the class of persons meant to be protected under part 23. In *Cannon v. University of Chicago* (1979), 441 U.S. 677, 60 L. Ed. 2d 560, 99 S. Ct. 1946, the Supreme Court stated:

> "[T]he right- or duty-creating language of the statute [part 1 of the *Cort* test] has generally been the most accurate indicator of the propriety of implication of a cause of action. With the exception of one case, in which the statute reflected a special policy against judicial interference, this Court has never refused to imply a cause of action where the language of the statute explicitly conferred a right directly on a class of persons that included plaintiff in the case." *Cannon*, 441 U.S at 690 n.13, 60 L. Ed. 2d at 571 n.13, 99 S. Ct. at 1980 n.13.

Parts 21 and 23 do not indicate whether their framers intended to create or deny a private cause of action. Silence, however, does not negate a cause of action. "Where a plaintiff is a member of the benefitted class, where Congress has not expressly denied a private cause of action, and where the language of the statute explicitly confers a right directly upon a class of persons that may include the plaintiff, we conclude that the second strand of the *Cort* test is satisfied." *Mikkilineni v. United Engineers & Constructors, Inc.* (E.D. Pa. 1980), 485 F. Supp. 1292, 1296.

The purpose of part 21 is to prevent discrimination against protected classes of persons participating in USDOT-funded activities and programs, and the purpose of part 23 is to encourage the fullest participation of MBEs in USDOT-related programs. CDC's action seeks to obtain redress for violation of these purposes. Such redress

---

*tors, Inc.* (E.D. Pa. 1980), 485 F. Supp. 1292, 1296.

would likely act as a deterrent against future violations of parts 21 and 23. Accordingly, a private cause of action is consistent with the purposes of the regulations.

The regulations are designed to protect the civil rights of their protected classes. Civil rights legislation is not traditionally relegated to state law (*Mikkilineni*, 485 F. Supp. at 1297), and the fourth and final prong of *Cort* is satisfied. As a result, we find that 49 C.F.R. parts 21 and 23 imply a private cause of action.

### D. SUMMARY

The award of use and occupancy is affirmed. All counts against IDOT were properly dismissed under the Immunity Act because they were founded upon a contract with the State. The claims brought against Brown are considered to be claims against the State under the *Management Association* test. The contract-related claims brought against Brown in counts V, VI, and VII fell under the Immunity Act and were properly dismissed. Although Brown did not receive immunity for the alleged violations made actionable under 42 U.S.C. §§ 1981 and 1983, section 1983 actions against the State are not permitted in state court, and section 1981 claims are similarly barred because damages under section 1981 must have been sought through section 1983. Because section 1982 actions against the State are not prohibited, the circuit court erred in dismissing CDC's section 1982 actions. Finally, because a private cause of action is permitted under 49 C.F.R. parts 21 and 23, CDC's related claims should not have been dismissed.

Affirmed in part; reversed in part and remanded.

SCARIANO, P.J., and HARTMAN, J., concur.